**Viola MOODY, et al. (84–5479), George D. Bawgus, et al. (84–5695), Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, et al., Defendants-Appellees.**

Nos. 84–5479, 84–5695.

United States Court of Appeals, Sixth Circuit.

Argued June 10, 1985.

Decided Oct. 8, 1985.

Lenny L. Croce (argued), Oak Ridge, Tenn., L. Caesar Stair, III, Terri Leigh Tribble, Bernstein, Susano, Stair & Cohen, Knoxville, Tenn., Michael J. O'Connor, Johnson City, Tenn., for plaintiffs-appellants.

John W. Gill, U.S. Atty., Michael Haynes, Knoxville, Tenn., J. Paul McGrath, Donald E. Jose, Jo Brooks (argued), U.S. Dept. of Justice, Washington, D.C., Andy Troutman, LaFollette, Tenn., William T. Wray, Jr., Kingsport, Tenn., for defendants-appellees.

Gideon Anders, Berkeley, Cal., for amicus curiae, National Housing Law Project.

Before CONTIE and WELLFORD, Circuit Judges; and EDWARDS, Senior Circuit Judge.

CONTIE, Circuit Judge.

Plaintiffs Viola Moody, George Bawgus *et al.* appeal orders of the district courts granting judgment for the United States in plaintiffs' actions pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 *et seq.* claiming negligent supervision and inspection of their homes by employees of the Farmers Home Administration (FmHA) pursuant to the Housing Act of 1949. We affirm.

## I.

### A.

On May 19, 1980, Viola Moody applied for a rural housing loan from the FmHA office for Campbell County, Tennessee. Moody's application was approved and a loan of $29,400.00 was used to purchase a house on Lot No. 78 in the Valley View Estates Subdivision in Campbell County. A deed of trust and promissory note dated July 10, 1980 provided:

> This Note [instrument] shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

The home purchased by Moody was inspected three times with no deficiencies reported.

On January 6, 1984, Moody and her mother, Hiley Shoffner, filed a complaint pursuant to the Federal Tort Claims Act seeking "damages arising from the negligent acts omissions of officers and employees of Defendant United States of America in the performance of contractual and statutory duties and undertakings." Moody alleged that after she began living in the residence she discovered that the soil was inappropriate for a residential dwelling and subsurface sewage disposal system, and that the dwelling was unfit for human habitation. Moody alleged that "[t]he site development and construction of the house had been inspected and approved by FmHA," and that "[a]t the time of her application, the Plaintiffs believed that the involvement of federal officials in the construction of their home would assure compliance with all state, local, and federal building codes." Further,

> FmHA officials and employees undertook to perform a duty which was consistent with its statutory authorization to provide safe and decent housing. The FmHA's undertaking pursuant to the statutes and regulations, was to provide technical assistance to Viola Moody, including supervision and inspection of site development, dwelling construction, and individual water/sewerage system. Viola Moody justifiably relied on the undertakings of the FmHA to inspect the property with due care, to determine its safety, and to provide technical advice and assistance when necessary. FmHA officials and employees failed to exercise

due care in providing technical assistance, supervision and inspection.

Moody and Shoffner alleged that their personal property was damaged and that they suffered personal injuries in the form of nervousness, nausea, and difficulty in breathing.

On March 12, 1984, the United States moved to dismiss or for summary judgment and, on April 19, 1984, the district court granted the motion. 585 F.Supp. 286 (E.D. Tenn.1984). Moody premised her argument on the Good Samaritan doctrine of Restatement (Second) of Torts § 323. However, the district court found that reliance was an element of an action under that doctrine, and that 7 C.F.R. § 1924.9(a), (b)(5) provides that inspections are for the FmHA's benefit only and that the borrower is required to inspect to protect her interest. The court held that the regulation precluded Moody from relying on the FmHA inspections, and, therefore, that summary judgment was appropriate. On May 15, 1984, the pendent state claims were dismissed, and Moody appealed.

### B.

On June 3, 1981, George and Patricia Bawgus applied for a rural housing loan from the FmHA office for Washington County, Tennessee.[1] On July 1, 1981, a conditional commitment was issued noting that there would be three stages of inspection. The commitment provided:

The construction must be completed in accordance with the MPS [Minimum Property Standards], drawings and specifications or description of materials submitted with the application.

The Farmers Home Administration will, if the construction is completed in accordance with the terms of the conditional

commitment, approve the house as suitable for a rural housing loan. . . .

The inspections were conducted between September 3, 1981 and October 29, 1981. On November 13, 1981, after construction was complete, the Bawguses signed a promissory note and deed of trust with provisions incorporating FmHA regulations similar to those in Moody's documents. The Bawguses contend that they were never informed that the inspections were solely for FmHA's benefit and thought they were for their benefit as well. Each of the borrowers purchased a lot and house within a subdivision of property owned by Sam Pate and John Kenney d/b/a Rock Creek Builders.

On May 19, 1983, the borrowers filed a complaint pursuant to the FTCA against the United States and the contractors of the homes on Frank Lowe Road in Jonesboro, Tennessee. In a 51-page complaint the plaintiffs alleged that in each case the FmHA inspected the home and in each case such dwelling was defective. The primary defect was water drainage which rendered the houses uninhabitable. The borrowers alleged:

60. FmHA, through its employees, undertook the supervision and inspection of the construction of the plaintiffs' homes.

61. FmHA defendants failed to exercise reasonable care in their supervision and inspection of the construction of the plaintiffs' homes, thereby directly and proximately causing the plaintiffs to suffer substantial damages.

Plaintiffs alleged mental and physical stress as personal injuries in addition to property damage.[2] The answer asserted,

---

**1.** Similar loans were sought by Rosie Overbay, Martha Briggs, Toney and Whitney Clouse, Steven and Kathy Hartley, Donnie and Teresa Campbell, and Raymond and Viva Clark (hereafter, "the borrowers"). Facts respecting these loans are not reviewed hereafter since no dispositive features of the home acquisition process distinguish these claims from those of the Bawguses. We note that the houses purchased

by the Hartleys and Campbells were built under contract rather than conditional commitment.

**2.** The borrowers alleged that after they moved into their homes constructed on lots in the Pate and Kenney subdivision, they experienced water drainage problems. After rains, water flooded the crawl spaces under their homes, would not drain off the property, and became stagnant and a breeding ground for insects. Driveways be-

among other defenses, that plaintiffs' remedy pursuant to 42 U.S.C. § 1479(c) is exclusive, and that the inspections constituted a discretionary function pursuant to 28 U.S.C. § 2680.

On February 27, 1984, the United States moved for judgment on the pleadings pursuant to Fed.R.Civ.Pro. 12(c). On March 23, 1984, the magistrate issued a recommendation recommending denial of the government's motion. On April 9, 1984, Judge Hull adopted that report and denied the motion. The United States sought reconsideration after Judge Taylor issued his opinion in *Moody,* and Judge Hull granted the government's motion in accordance therewith. This court consolidated the cases for appeal.

## II.

Pursuant to Section 501 of the Housing Act of 1949, the Secretary of Agriculture is authorized "to extend financial assistance, through the Farmers Home Administration ... to rural residents ... in order to enable them to provide dwellings and related facilities for their own use." 42 U.S.C. § 1471(a)(2). Section 501(c) specifies the conditions of eligibility for such loans.[3] Further, 42 U.S.C. § 1476(a) provides:

In connection with financial assistance authorized in this subchapter, the Secretary shall require that all new buildings and repairs financed under this subchapter shall be substantially constructed and

in accordance with such building plans and specifications as may be required by the Secretary. Buildings and repairs constructed with funds advanced pursuant to this subchapter shall be supervised and inspected as required by the Secretary. In addition to the financial assistance authorized in this subchapter, the Secretary is authorized to furnish, through such agencies as he may determine, to any person, including a person eligible for financial assistance under this subchapter, without charge or at such charges as the Secretary may determine, technical services such as building plans, specifications, construction supervision and inspection, and advice and information regarding farm dwellings and other buildings.

7 C.F.R. § 1924.5 specifies that development and construction must meet a variety of standards.[4] Section 1924.1 specifies that "[t]his subpart prescribes the basic Farmers Home Administration (FmHA) policies, methods, and responsibilities in the planning and performing of construction and other development work for insured Rural Housing (RH)...." Section 1924.5(f) provides:

Planning construction and land development and obtaining technical services in connection with drawings, specifications, and cost estimates are the responsibility of the applicant, with such assistance

---

came unusable, yards became sinkholes, and earth pulled away from foundations and became unstable. Foundations cracked, house walls cracked, ceilings sagged, exterior paint peeled, sidewalks and steps separated from foundations, floor joists warped or buckled, and septic tanks failed.

**3.** In order to be eligible for the assistance authorized by subsection (a) of this section, the applicant must show (1) that he is the owner of a farm which is without a decent, safe, and sanitary dwelling for himself and his family and necessary resident farm labor, or for the family of the operating tenant, lessee, or sharecropper, or without other farm buildings adequate for the type of farming in which he engages or desires to engage, or that he is the owner of other real estate in a rural area or a rural resident without an adequate dwelling or relat-

ed facilities for his own use or buildings adequate for his farming operations, or that the applicant is an elderly or handicapped person or family in a rural area without an adequate dwelling or related facility for its own use, or that he is the owner of a farm or other real estate in a rural area who needs refinancing of indebtedness described in clause (4) of subsection (a) of this section; (2) that he is without sufficient resources to provide the necessary housing and buildings on his own account; and (3) that he is unable to secure the credit necessary for such housing and buildings from other sources upon terms and conditions which he could reasonably be expected to fulfill.
42 U.S.C. § 1471(c).

**4.** 7 C.F.R. § 1804.66 sets out general regulations with respect to water and waste disposal systems.

from the County Supervisor or District Director, (whichever is the appropriate loan processing and servicing officer for the type of loan involved), as may be necessary to be sure that the development is properly planned in order to protect FmHA's security.

Subsection (f)(2) describes the responsibilities of the FmHA County Supervisor or District Director which include advising "the applicant regarding drawings, specifications, cost estimates and other related material."

7 C.F.R. § 1944.45 defines a conditional commitment as an "assurance from FmHA to a qualified builder or seller that a dwelling to be built or rehabilitated and offered for sale will be acceptable for purchase by qualified RH loan applicants if built in accordance with FmHA approved plans and specifications." Subsection (f)(3)(ii) provides that "[t]he County Supervisor will ... [d]etermine whether the dwelling and site meet the requirements of this Subpart and Subpart A of Part 1924 of this Chapter and will comply with all local codes and ordinances. The property must meet the requirements of Subpart D or Part 1804 of this Chapter...." Further, subsection (i)(2) provides that "[c]onditional commitments will be cancelled when construction is not in accordance with all FmHA requirements, approved plans, specifications, or MPS...." Subsection (g) provides that "[i]nspections of work to be done will be performed in accordance with Subpart A of Part 1924 of this Chapter."

7 C.F.R. § 1924.9 provides for three stages of inspection and provides that "[t]he County Supervisor ... will be responsible for following up on the correction of deficiencies...." Most relevant to this action, however, subsection (a) provides:

The County Supervisor or District Director, accompanied by the borrower when practicable, will make final inspection of all development work and periodic inspections as appropriate to protect the security interest of the government. In this respect, inspections other than final inspections, may be conducted by other qualified personnel as authorized under agreements executed by or authorized by the National Office. The borrower will be responsible for making inspections necessary to protect the borrower's interest. *FmHA's inspections are not to assure the borrower that the house is built in accordance with the plans and specifications. The inspections create or imply no duty or obligation to the particular borrower* but are, rather, for the dual purposes of determining that FmHA has adequate security for its loan and enabling FmHA to determine that FmHA is working toward achieving the statutory goal of providing adequate housing.

(Emphasis added). Further, subsection (b)(5) provides that "[t]he borrower should make enough periodic visits to the site to be familiar with the progress and performance of the work, in order to protect the borrower's interest."

While the district courts principally dealt with appellants' allegations of negligent inspection, the courts applied similar rationales in disposing of appellants' arguments respecting negligent supervision and negligent provision of technical assistance. Accordingly, we consider these claims.

### III.

■ 28 U.S.C. § 2674 provides in pertinent part:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances....

Our jurisdiction over FTCA claims is conferred by 28 U.S.C. § 1346(b) which provides in pertinent part:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This section constitutes a waiver by the United States of its sovereign immunity. *Feyers v. United States,* 749 F.2d 1222, 1225 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985). ■ "Whether a claim could be made out [under the FTCA] would depend upon whether a private individual under like circumstances would be liable under state law...." *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963). "[The Act] was designed to build upon the legal relationships formulated and characterized by the States...." *Richards v. United States,* 369 U.S. 1, 7, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962); *Aretz v. United States,* 604 F.2d 417, 431 n. 18 (5th Cir.1979) ("The Tort Claims Act deals with sovereign immunity—that is, with whether the United States may be sued for certain torts; it does not define what are torts.").

Appellants assert that, under Tennessee law (the Good Samaritan doctrine and the negligence per se doctrine), issues of fact respecting liability exist sufficient to withstand the defendant's motions. We consider these contentions in turn.[5]

#### A.

While no Tennessee court has expressly adopted the Good Samaritan doctrine embodied in Restatement (Second) Torts § 323,[6] the doctrine's essential principle is reflected in Tennessee tort law. *Nidiffer v. Clinchfield Railroad Company,* 600 S.W.2d 242, 246 (Tenn.App.1980) ("It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all...." (quoting *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275, 276 (1922)); *Howell v. Betts,* 211 Tenn. 134, 362 S.W.2d 924, 925 (1962) ("[A] duty has been imposed and defendant held liable to a plaintiff not in privity in a number of classes of cases, such as that of a supplier of goods or services which, if negligently made or rendered, are 'reasonably certain to place life and limb in peril.' *MacPherson v. Buick Motor Co.,* 217 N.Y. 382 [111 N.E. 1050].").  Our district courts have reached a similar conclusion, *Arcon Corp. v. Liberty Mutual Insurance Co.,* 591 F.Supp. 15, 20 (M.D.Tenn.1983); *Lemar v. United States,* 580 F.Supp. 37, 39 (W.D. Tenn.1984); *contra Mosley v. United States,* 456 F.Supp. 671, 675 (E.D.Tenn, 1978) (pre-*Nidiffer*).  *See also Neal v. Bergland,* 646 F.2d 1178, 1179, 1181–82 (6th Cir.1981), *aff'd sub nom. Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983).[7]  The Fifth Circuit has reached a similar and analogous conclusion. *Canipe v. National Loss Control Service Corp.,* 736 F.2d 1055, 1060 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 965, 83 L.Ed.2d 969 (1985) (Restatement (Second) Torts § 324A).  Since we conclude

---

**5.** Although the government's motion in *Bawgus* was for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), it is clear that matters outside the pleadings were presented; we, therefore, consider the court's decision as if entered on a motion for summary judgment, Fed.R. Civ.P. 56.  Summary judgment is appropriate when the movant has shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  "[T]he evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).

**6.** Section 323 has often been the source of FTCA liability. *Indian Towing Co. v. United States,* 350 U.S. 61, 64–65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955); *Pierce v. United States,* 679 F.2d 617, 621 (6th Cir.1982); *Reminga v. United States,* 631 F.2d 449, 452 (6th Cir.1980).

**7.** The Supreme Court noted, however,:

The Court of Appeals found that respondent stated a claim against the United States under the common-law Good Samaritan doctrine which is described in § 323 of the Restatement (Second) of Torts (1965).  However, the court did not expressly find that Tennessee law recognizes this doctrine....

460 U.S. at 294 n. 3, 103 S.Ct. at 1092 n. 3.

that plaintiffs state no claim for relief under the Good Samaritan doctrine, we need not decide whether Tennessee law recognizes the doctrine.

Section 323 provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

In *Neal,* we held that a plaintiff, similarly situated to appellants, stated claims pursuant to section 323 for negligent supervision and inspection under the Housing Act of 1949 and the regulations authorized thereunder, 42 U.S.C. § 1480(k). 646 F.2d at 1184. However, subsequent to our decision in *Neal,* the FmHA revised the regulations to reflect that FmHA aid in planning the construction and in inspecting is only to protect the government's security interest in the homes. 7 C.F.R. §§ 1924.5(f), .9.

■■■ The principal element in applying Section 323(b) is the plaintiff's reliance on the government's undertaking.[8] *Lemar,* 580 F.Supp. at 40. *See also Cash v. United States,* 571 F.Supp. 513, 515 (N.D.Ga. 1983); *Park v. United States,* 517 F.Supp. 970, 977 (D.Ore.1981). In other contexts, we have found reliance precluded by clear statutory or regulatory language. In *Raymer v. United States,* 660 F.2d 1136 (6th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982), plaintiff cited as negligent the action of Bureau of Mines inspectors in granting an operator an extension of time to correct a safety violation. The court found that it was unreasonable for a plaintiff to rely on the inspectors when the statute placed primary responsibility for compliance with safety standards on the operators. *Id.* at 1143. Further, regulations published in the Code of Federal Regulations "have the force and effect of law, and all persons affected thereby are charged with legal notice of their provisions." *Adamsville Lumber Company v. Rainey,* 348 F.Supp. 373, 376 (W.D.Tenn.1972) (Wellford, J.). *See also Ramey v. Block,* 738 F.2d 756, 762 (6th Cir.1984).

■■■ The FmHA's undertaking to inspect and the limitations thereon are clearly set out in 7 C.F.R. § 1924.9.[9] Appellants can-

---

**8.** It is clear that federal regulations can create the duty or undertaking which state law requires be performed with reasonable care. *Art Metal-U.S.A., Inc. v. United States,* 753 F.2d 1151, 1158–59 (D.C.Cir.1985); *Sellfors v. United States,* 697 F.2d 1362, 1367 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984); *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1091 (D.C.Cir.1980). We addressed this issue in *Schindler v. United States,* 661 F.2d 552, 560 (6th Cir.1981), where the court held that while "[i]t is clear that usually the federal regulatory statute is not the source of a private right of action," "[t]he federal statute or regulation may well be relevant to the analysis of the state cause of action" under § 323. (footnote omitted). "[T]he federal regulatory statute may be relevant in defining the scope of the undertaking of the United States and the plaintiff's right to rely thereon." *Id.* (footnote omitted).

**9.** Appellants argue that the regulation at issue, 7 C.F.R. § 1924.9, is invalid because it conflicts with Congressional intent in enacting the Hous-

ing Act of 1949. However, the FTCA itself makes clear that an action for damages may not be premised on the invalidity of a regulation. 28 U.S.C. § 2680(a) provides in pertinent part:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, *whether or not such statute or regulation be valid....*

(emphasis added). "[T]he act provides that the actions of government employees acting within a statutory or regulatory framework are not a basis for a claim even if the statute or regulations be invalid." *Dupree v. United States,* 247 F.2d 819, 824 (3d Cir.1957).

[T]he Tort Claims Act did not contemplate "that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort." Nor did it contemplate a remedy for damages sustained by reason of the application of invalid laws or regulations.... Since his claim is based upon nothing more than

not premise liability on the voluntary undertaking represented by the regulations independent of the limitations expressly circumscribing that undertaking. Accordingly, we conclude that the plain language of that regulation indicating that inspection is for the government's benefit precludes reasonable reliance by appellants on such inspection, and establishes that no issue of material fact exists.

Our review of the complaints and briefs in this case reveal no factual basis to support an undertaking by the government to supervise construction apart from those undertakings on which appellants' are precluded from relying.[10] Section 1924.9(b) provides that inspection is for the government's benefit and section 1924.5(f) provides likewise with respect to FmHA assistance in planning construction and obtaining technical services. Accordingly, these regulations preclude appellants' reliance on FmHA's actions in those regards. Therefore, to the extent that a duty to supervise is alleged, we concur in the judgment of the district courts that no issue of material fact exists respecting the government's liability under the Good Samaritan doctrine.

### B.

■ Appellants contend that the Tennessee doctrine of negligence per se can provide a source of liability pursuant to the FTCA. *Art Metal-U.S.A., Inc.*, 753 F.2d at

1159; *Schindler*, 661 F.2d at 561; *Insurance Company of North America v. United States*, 527 F.Supp. 962, 967 (E.D.Ark. 1981); *Doe v. United States*, 520 F.Supp. 1200, 1202 (S.D.N.Y.1981).

It is a well settled proposition of law that failure to perform a statutory duty is negligence per se, and if injury is the proximate result or consequence of this negligent act, there is liability. However, the person suing must be such a person as is within the protection of the law and intended to be benefited thereby. *Berry v. Whitworth*, 576 S.W.2d 351, 353 (Tenn.App.1978); *Davidson v. Power Board of the City of Pulaski*, 686 S.W.2d 581, 585–86 (Tenn.App.1984); *Tennessee Farmers Mutual Insurance Co. v. Hinson*, 651 S.W.2d 235, 238 (Tenn.App.1983); *Traylor v. Coburn*, 597 S.W.2d 319, 322 (Tenn.App.1980).[11] In *Teal v. E.I. DuPont de Nemours and Co.*, 728 F.2d 799 (6th Cir.1984), this court, applying Tennessee law, held that, pursuant to the doctrine of negligence per se, an employer could be held liable for violation of an OSHA regulation. *Id.* at 802–04. Accordingly, since under Tennessee law a private individual could be held liable for violation of a federal regulation, the United States under the FTCA is exposed to similar liability.[12]

■ The regulations cited as establishing the duty to inspect and supervise inher-

the invalidity of the regulations ... it is precisely the type of claim which Congress intended to exclude....
*Id.* at 824–25 (footnote omitted). *See also Hatahley v. United States*, 351 U.S. 173, 181, 76 S.Ct. 745, 751, 100 L.Ed. 1065 (1956); *Dupree v. United States*, 264 F.2d 140 (3d Cir.), *cert. denied*, 361 U.S. 823, 80 S.Ct. 69, 4 L.Ed.2d 67 (1959); *Dalehite v. United States*, 346 U.S. 15, 33, 73 S.Ct. 956, 966, 97 L.Ed. 1427 (1953).

10. We note that in some cases the FmHA has made an explicit undertaking to supervise. *See* 7 C.F.R. § 1924.59. However, that duty or undertaking applies only to a limited class of borrowers to which appellants do not allege that they belong. 7 C.F.R. § 1924.51 ("borrowers who depend on farm income for loan repayment").

11. Restatement (Second) of Torts § 286 provides a more detailed and precise elucidation of the negligence per se doctrine.

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
  (a) to protect a class of persons which includes the one whose interest is invaded, and
  (b) to protect the particular interest which is invaded, and
  (c) to protect that interest against the kind of harm which has resulted, and
  (d) to protect that interest against the particular hazard from which the harm results.

12. The government's argument that it cannot be held liable because state law would not make a governmental entity liable for such acts has been rejected since the FTCA imposes on the United States the same liability as a private individual. *Schindler*, 661 F.2d at 560; *Raymer v. United States*, 660 F.2d 1136, 1140 (6th Cir. 1981). *See however Jayvee Brand, Inc. v. United States*, 721 F.2d 385, 390 (D.C.Cir.1983).

ently limit the scope of those duties and make clear that the government rather than the borrower is the party which the regulations are intended to protect. This is patently clear from the language of the regulations, upon which appellants' claims are based.[13] Accordingly, the regulations, under the facts presented by the parties, preclude the existence of any material facts regarding the government's liability pursuant to the negligence per se doctrine. Therefore, we find that the district courts did not err in granting the motions for summary judgment.[14]

Accordingly, the judgment of the district courts are AFFIRMED.

---

**13.** The statute provides only that buildings "shall be supervised and inspected as required by the Secretary," 42 U.S.C. § 1476(a), and, therefore, provides no standard of care to which the negligence per se doctrine could be applied. We, of course, would have no jurisdiction to consider an action under the doctrine of negligence per se based on the statute and incorporating the standards of care set out in the regulations, since such an action would, under these facts, be based on a challenge to the validity of the regulation. *See, supra* note 9.

**14.** Our holding does not leave appellants without remedy. Congress has provided appellants with an administrative remedy, 42 U.S.C. § 1479(c), for claims arising from defects in housing purchased with FmHA funds. In light of our disposition of the case, we, like the Supreme Court, decline to decide whether 42 U.S.C. § 1479(c) provides an exclusive remedy for appellants' claims. *Block v. Neal,* 460 U.S. at 294–95 n. 4, 103 S.Ct. at 1092–93 n. 4. The district courts did not address this issue.