**FEDERAL DEPOSIT INSURANCE CORP., Plaintiff,**

v.

**Clarence BLACKBURN, et al., Defendants.**

**No. Civ–2–84–388.**

United States District Court, E.D. Tennessee, Northeastern Division.

Oct. 29, 1985.

## MEMORANDUM AND ORDERS ON PENDING MOTIONS

ROBERT P. MURRIAN, United States Magistrate.

This action was referred to the undersigned by Order entered October 10, 1985, and pursuant to 28 U.S.C. § 636(b) and the Rules of this Court for consideration of the following motions:

1. The Federal Deposit Insurance Corporation's [FDIC] motion for a protective order [Court File No. 47];

2. The motion of defendants, G. Doyle Wilder and Charles Hurt, for leave to file an amendment to their answer and to file a counterclaim [Court File No. 77];

3. The motion for *pro hac vice* admission of Marcia J. Meredith, Esq. [Court File No. 92];

4. The motion of defendant Roger West to amend his answer, file a counterclaim and to file a third-party claim [Court File No. 102]; and,

5. The FDIC's motion to recover costs of service of process [Court File No. 105].

All of these motions are non-dispositive in nature [1] and therefore may be determined by the undersigned subject to any party's right to file a timely appeal of such determination to a judge of this court for review on a clearly erroneous or contrary to law basis. 28 U.S.C. § 636(b)(1)(A); Rule 72(a), Federal Rules of Civil Procedure.

### I. *Motion for a Protective Order*

The FDIC moved on February 22, 1985, for a protective order pursuant to Rule 26(c), Federal Rules of Civil Procedure, which would have (1) quashed all pending discovery requests and (2) prohibited defendants from filing additional discovery requests until such time as defendants have reviewed certain documents which the FDIC proposes to submit voluntarily. The order is necessary, contends the FDIC, to prevent undue burden and expense.

On March 19, 1985, defendant Roger West filed a brief in opposition to the FDIC's motion [Court File No. 55]. For some reason, that was overlooked when the undersigned caused to be filed a Memorandum to Counsel on March 28, 1985 [Court File No. 57]. That memorandum was premised on the erroneous belief that no defendant had objected to the FDIC's motion. Defendant West pointed out the error in a letter to the Clerk dated March 29, 1983 [Court File No. 60]. No one objected, however, to the Memorandum to Counsel, *see* Rule 72(a), Federal Rules of Civil Procedure, nor did anyone ask for a discovery conference as suggested therein. In any event, it was not until October 10, 1985, that the undersigned realized that the motion for a protective order had never been acted upon.

The FDIC represents that the answers "to most, if not all," of the interrogatories filed by defendant West are contained in documents which it has assembled, numbered and segregated in its Knoxville of-

---

1. "Dispositive" matters are listed in 28 U.S.C. § 636(b)(1)(A) (*e.g.* motions for summary judg-ment; motions to dismiss for failure to state a claim upon which relief can be granted).

fices in a central depository. It attached as Exhibit 1 to its motion a list of documents to be contained in the proposed depository. Attached as Exhibit 4 is a list of loans or lines of credit which FDIC has identified as those which it will rely upon to prove damages. FDIC's Memorandum in Support of Motion to Consolidate, p. 3 [Court File No. 20]. Also, the FDIC proposes to place a summary for each loan file for which it is seeking recovery in the depository, which traces that loan or line of credit and sets forth some of the grounds for liability. An example of such a summary for a loan to General Equipment Company is attached as Exhibit 3 to the motion. The FDIC represents that while the specific grounds for liability may be expanded as more information comes to light, the summary will represent what is known at a given time. Also, FDIC proposes to place in the depository copies of the actual files relating to these lines of credit which were maintained by the bank whether designated credit file, collateral file, loan file or whatever, as well as loan policies, and audits, both internal and outside, if such exist.

The FDIC's proposal makes good common sense. This is complex litigation. Moreover, multiple bank failures in this area in 1983 and 1984 have created other lawsuits in which the same loans or lines of credit will almost certainly be involved. Many lawyers are going to want to inspect many of the same documents. It makes sense to put them in a central depository where they will be available to all and where they can be indexed and safeguarded.

\* \* \* \* \* \*

The Federal Rule[s] of Civil Procedure provide for inspection and copying of documents and other physical evidence at such time and place and in such manner as provided by order of the court. In the ordinary case, documents are inspected at the office of the custodian or his counsel. When voluminous documents may be inspected and copies by many parties, the development of centralized depositories is a major step forward in the order-

ly, efficient, and economical processing of a complex case. Depositing the documents at one or more convenient locations, in the custody of the parties or of an officer of the court, does much to eliminate expensive, burdensome, time-consuming, and wasteful efforts by many parties to study, copy, and analyze documents in widely separated locations....

Control of the documents in a central depository makes information on compliance with orders for document deposits and on utilization by the parties readily available. This information is useful for shaping and planning subsequent discovery. The existence of a document depository enables the court and the parties to determine quickly and precisely what documents have been produced and what information is in the documents. This information, in turn, aids the court in rulings on motions for discovery and preclusion and to compel compliance with discovery orders.

\* \* \* \* \* \*

1–Pt.2 *Moore's Federal Practice* ¶ 2.50 (Manual for Complex Litigation) (footnote omitted).

The thrust of defendant West's objection is that the claims against him lack any basis in fact; that his tenure on the Board of Directors of the Bank ended September 10, 1980; that the Bank did not fail until July 29, 1983; that he has submitted interrogatories and a request to produce to the FDIC which if answered will exonerate him; that the D & O insuror has sued him for a declaration that he has no coverage; that defending two suits which lack a basis in fact is very unfair and very expensive; and that his discovery should be responded to immediately so that he can file a motion for summary judgment.

The FDIC is asking the Court to mandate a sequence of discovery whereby defendant West would be required to go to the depository and attempt to answer his own questions which he posed in the interrogatories before FDIC has any duty to answer specific interrogatories. Brief in

Support of Motion, pp. 2–4 [Court File No. 47a]. I do not believe such a course of action is advisable. "In the interests of fairness and efficiency, all parties should proceed with discovery simultaneously." 1–Pt.2 *Moore's Federal Practice* ¶ 0.50. The Court has ample means to limit possible abuses of what is generally recognized as the right of a party to pursue simultaneous discovery. *See, e.g.,* Rules 11, 26(b)(1), 26(c), 26(d), 37, Federal Rules of Civil Procedure. But, the party claiming abuse has the burden of demonstrating under a particular set of facts that discovery is being abused in some way.

Defendant West filed his interrogatories and requests to produce on January 23, 1985 [Court File Nos. 32, 33]. The interrogatories are very detailed and the list of documents requested is extensive. However, defendant West has been sued for $10,000,000.00, and he is entitled to find out what *the FDIC* says about his alleged personal involvement in the conduct specified in the Amended Complaint.

The FDIC has the option to produce business records under certain circumstances in lieu of making specific answers to interrogatories. Rule 33(c), Federal Rules of Civil Procedure (specification of such records may be allowed if specification "is in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained").

■ For the reasons indicated, the FDIC's motion for a protective order will be granted in part and denied in part. It will be granted to the extent that the FDIC will be allowed to set up a central depository to house the documents mentioned above and any other document deemed by it to be relevant to this litigation. An Agreed Protective Order has already been entered in this action. But, the motion will be denied insofar as it requests an order quashing all pending discovery requests or prohibiting the filing of further discovery requests. The FDIC shall respond to defendant West's pending discovery requests within thirty-three days of entry of this Memorandum and Order and as otherwise required by Rules 33(a) and 34(b), Federal Rules of Civil Procedure.

## II. *Defendants Wilder and Hurt's Motion to Amend their Answer and for Leave to File a Counterclaim*

### A. *Answer*

■ Motions to amend are almost always granted because a party should have the right to test his claim or defense on the merits without being shackled by some procedural technicality. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). But, when the proposed amendment is futile, the court need not allow it. *Id; see also* 3 *Moore's Fed. Practice* ¶ 15.08[4] (2d ed. 1984). In fact, a court acts in the parties' best interest by not allowing a futile amendment, since allowing it will only lead to a waste of time, energy and money on the part of the court and the parties. Irrelevant matters cloud the real issues in the case. *See Gregory v. Mitchell,* 634 F.2d 199, 203 (5th Cir.1981).

For the reasons indicated below, the following paragraphs of the proposed Amended Answer shall be deemed added to the Answers of Defendants Wilder and Hurt: 24, 26, 28(a) and (b), 29(a), (b) and (c), 30 and 33. In all other respects, it is ORDERED that the motion for leave to amend the answers be DENIED and further that leave to file a counterclaim be DENIED.

In the proposed amended answer, the defendants assert, *inter alia,* that the "operational negligence" of the FDIC regarding the examination, supervision and regulation of City & County Bank of Washington County (CCW) was the cause of its failure and not any conduct on the defendant's part; that the FDIC condoned the criminal conduct which caused the bank to fail; that it tacitly participated in a civil and criminal conspiracy to rob the banks of their assets; and that the FDIC has acted "with disparate treatment in applying its supervisory regulatory power in such a way as to have a discriminatory effect on these defendants."

■ The FDIC's role as receiver and as a corporate insurer are distinct. *FDIC v. Hatmaker,* 756 F.2d 34, 36 (6th Cir.1985). The FDIC sues in the instant case in its corporate capacity as assignee of all claims that CCW may have against its former officers and directors. For an outline of how the FDIC functions in these distinct capacities, *see Gunter v. Hutcheson,* 674 F.2d 862, 865–866 (11th Cir.) *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

It appears to the undersigned that defendants are attempting to make an "end run" around an earlier ruling in this case which established as the law of the case that it was no defense to the claims being made by plaintiff that the plaintiff allegedly engaged in some misfeasance or malfeasance in connection with its role in examining CCW before it failed. Memorandum and Order filed February 8, 1985, *aff'd;* Memorandum and Orders filed April 25, 1985, and *aff'd* again on reconsideration; Order filed May 23, 1985 [Court File Nos. 38, 67, 89]. Having been unsuccessful in raising defenses of contributory negligence, laches, estoppel and waiver, certain defendants now wish to raise as a defense the alleged conduct of the FDIC before and after CCW failed as bearing on the questions of proximate causation and intervening cause. As I understand it, defendants insist that they have the right to show at trial that it was the misfeasance or nonfeasance of the FDIC which caused CCW to fail and which caused injury and damages to it after its failure. The thrust of their argument regarding their defensive pleading of these matters is that all of this is relevant to the issue of whether or not plaintiff can prove that CCW's damages were proximately caused by the conduct of the defendants. I respectfully disagree that certain of the defenses which defendants attempt to raise are viable for the reasons indicated below.

■ Since CCW was a state-chartered bank, the duties of its officers and directors must be determined according to the laws of the State of Tennessee. Fletch-

er, *Cyclopedia of the Law of Private Corporations* § 990, p. 518 (1975). In Tennessee, the common law right of a corporation to hold its officers liable for breach of their fiduciary duty to it is the same whether the corporation is a banking corporation or any other private corporation. *Neese v. Brown,* 218 Tenn. 686, 405 S.W.2d 577, 581 (1964).

The Tennessee General Corporation Act has codified Tennessee's common law rule with regard to the duty of directors. *Founders Life Corp. v. Hampton,* 597 S.W.2d 897, 899 (Tenn.1980).

> Duty of directors and officers.—Directors and officers shall discharge the duties of their respective positions in good faith and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. In discharging their duties, directors and officers, when acting in good faith, may rely upon financial statements of the corporation represented to them to be correct by the president or the officers of the corporation having charge of its books of account, or stated in a written report by an independent public or certified public accountant or firm of such accountants represented to them fairly to reflect the financial condition of such corporation.

T.C.A. § 48–1–813; *see also Fitzpatrick v. FDIC,* 765 F.2d 569, 576 (6th Cir.1985); *Neese v. Brown, supra.* There is no provision in the statute for officers and directors to place reliance on the FDIC to manage the business or affairs of the corporation. *Cf.* T.C.A. § 48–1–801 (the board of directors is to manage the business or affairs of every corporation); *see also* T.C.A. § 45–2–401–405.

> The common law duty of care arises from the director's *ultimate responsibility* for managing the corporation. This responsibility includes a concomitant risk of liability for financial loss to the corporation caused by mismanagement. Traditionally, the board of directors was supposed to "manage" the business and affairs of the corporation. Corporate prac-

tice today, however, indicates that directors perform a different role—one that essentially involves monitoring the affairs of the corporation; the officers of the corporation manage its affairs under the direction of the board of directors. The responsibility to direct the affairs of the corporation and the duty to discharge this responsibility diligently exists for both inside and outside bank directors.

Note, *A Realistic Duty of Care for Outside Bank Directors*, 51 Tenn.L.Rev. 569, 570–571 (1984)(emphasis added, footnotes omitted).

Contrast this duty of "ultimate responsibility" with the FDIC's lack of duty to a bank which it examines. In *First State Bank of Hudson County v. United States*, 599 F.2d 558 (3d Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980), the bank had failed and brought a Federal Tort Claims Act suit against the United States. The crux of the allegation was that the FDIC had discovered that the bank's president was engaging in criminal conduct in carrying out his duties during the course of the FDIC's examinations of the bank but that FDIC had negligently failed to warn the bank. The Court of Appeals affirmed dismissal of the suit. In doing so, it reasoned that the

\* \* \* \* \* \*

... purpose of the bank examinations by the FDIC under 12 U.S.C. § 1820(b) is to prevent losses that would result in claims against the insurance fund. Nothing in the Act purports to establish any duty requiring that the FDIC warn banks of irregularities perpetrated by their officials. When the FDIC carried out its responsibilities under the Act by examining the Bank, its purpose was to safeguard this system of insurance, and not as the plaintiff contends, to fulfill an obligation to notify the insured bank of any unlawful banking practice of bank officials.

The FDIC was not acting for the benefit of the Bank or even of the Bank's depositors and other creditors. If bank examinations by the FDIC reveal any irregularities or fraud, such examinations, though they may inure incidentally to the benefit of a bank, are intended primarily for the protection of the insurance fund. As the Senate Report on an amendment to the Act observed, the FDIC's "supervisory responsibilities relate to specific types of actions which have a direct bearing upon its role as insurer." ...

\* \* \* \* \* \*

None of the cases cited by the Bank supports its primary premise that bank examinations under the Act were intended to ring the alarm bell to arouse drowsy directors and misguided stockholders.

\* \* \* \* \* \*

599 F.2d at 563. The foregoing quote is certainly consistent with the generally-recognized rule that the duty of "ultimate responsibility" for management of the business and affairs of the corporation lies with its officers and directors.

■ One might argue (although it has not been raised as an argument by counsel) that the FDIC's duty to protect the insurance fund would logically require it to discharge that responsibility, at least in part, by sounding the alarm to unsuspecting officers and directors when it finds irregularities in a bank during the course of an examination. But, Congress decided otherwise. The FDIC discharges its duty to protect the insurance fund by pursuing its statutory rights granted in 12 U.S.C. § 1818. This may ultimately involve terminating a bank's insured status. The statute expressly provides that the FDIC is not to usurp a state banking agency's regulatory authority over a state-chartered bank. 12 U.S.C. § 1818(m); *Investment Co. Institute v. FDIC*, 728 F.2d 518, 525 (D.C.Cir. 1984). And so, Congress has told the FDIC how it must discharge its duties to protect the insurance fund. Not included in those duties is a duty to "... ring the alarm bell to arouse drowsy directors and misguided stockholders." *First St. Bank of Hudson County*, 599 F.2d at 563.

In my judgment the defendants are attempting to do what Professor Prosser has dubbed as "shifting responsibility."

A large number of negligence cases have turned on the problem of what might be called shifting responsibility—that is to say, that the defendant may not be required to take any precautions for the plaintiff's safety, because he is free to assume that someone else will do it or will be fully responsible in case he does not. Whether it can be said that the defendant is under no duty to act in such a case, or that he has exercised reasonable care in relying on another, the result is the same.

Prosser, *Law of Torts* § 33, p. 176 (4th ed. 1971); *see also, id.* at § 42, pp. 249–250.

For example, one who employs an independent contractor on his premises ordinarily may leave the work to the independent contractor and any negligence in performing the work is not chargeable to the owner. But, a surgeon cannot defend a malpractice suit on the ground that his assistants in the operating room should have counted the sponges before the patient was sewn up. *Id.* Just as the surgeon is charged with the duty of ultimate responsibility for not sewing up a patient with a sponge inside that patient, officers and directors are charged with the duty of ultimate responsibility to see that the business and affairs of the corporation are managed properly.

■ The duty to exercise reasonable care in the management of CCW never shifted to FDIC. That is established by law. Its duty as bank examiner is to protect the insurance fund, not manage the bank. *First State Bank of Hudson County, supra.* It must be kept in mind that FDIC is suing on the basis of CCW's right of action against its former officers and directors. It is therefore a *non sequitur* for the defendants to defend on the ground that they (who admittedly owed CCW a reasonable duty of care) may defeat recovery by showing that the FDIC (which had no duty to manage the affairs of the corporation) caused the bank's failure.

■ Nor can the defendants rely on the "Good Samaritan Doctrine" to shift the responsibility. That doctrine is found in Section 323 of the Restatement 2d of Torts.

\*     \*     \*     \*     \*     \*

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

. . . .

(b) the harm is suffered because of the other's reliance upon the undertaking.

\*     \*     \*     \*     \*     \*

It is not clear whether Tennessee law recognizes the doctrine. *Moody v. United States,* 774 F.2d 150, 155–56, (6th Cir.1985). Even if it is assumed to be part of Tennessee jurisprudence, it can have no application here. The officers and directors claim that they relied on the FDIC's examination of the bank and relied on the FDIC to warn them of matters discovered during bank examinations. No such reliance can exist, as a matter of law, where reliance is precluded by clear statutory or regulatory language. *Id.,* at 156; *United States v. Raymer,* 660 F.2d 1136, 1143 (6th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982). The purpose of bank examinations by the FDIC is to prevent losses that would result in claims against the insurance fund and this principle is established in 12 U.S.C. § 1820(b). Contrast this with the "ultimate responsibility" for managing the corporation which state law has placed on the board of directors for a long, long time. *See, e.g.,* T.C.A. § 45–2–402. The Tennessee Commissioner of Banking had the primary regulatory responsibility over the affairs of CCW and not the FDIC. Thus, if the defendants relied on the FDIC to warn them that the bank was in trouble, then such reliance was unreasonable as a matter of law and cannot serve to be a basis for invoking the "Good Samaritan Doctrine."

■■■ Also, since the FDIC's duty was to protect the insurance fund and was never to manage the bank or warn of unlawful activity, any failure on the part of the FDIC to act to prevent the failure of the bank was not a superseding cause of such harm. This principle is expressed in § 452 of the Restatement 2d of Torts.

§ 452. Third Person's Failure to Prevent Harm

(1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm.

(2) Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.

The quoted Restatement and Comment d thereto make it clear that the "duty" to prevent harm must shift to a third person (here the FDIC) before the original actor (here the officers and directors) are relieved of liability. *See also* § 439, Restatement 2d of Torts. Conceivably that duty could shift to the FDIC if it in fact "took over" an operating bank from its officers and directors and tried to manage it. Of course, no such scenario is suggested here.

The defendants' reliance on *In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723 (E.D.N.Y.1978) is misplaced. That case dealt with a situation where it was alleged that the FDIC had undertaken operational management of the bank that failed. 445 F.Supp. at 733–34. In the present case, the allegations are that the FDIC did not do enough to stop what was going on among certain insiders at the bank and that its "operational negligence" in failing to do so caused the bank to fail. In short, underregulation is alleged here, and not overregulation. As indicated above, no duty to the bank or its officers and directors arose by virtue of any failure on the part of the FDIC to act to prevent harm to the bank based on matters which it discovered or should have discovered during the examination process.

The foregoing is not intended to interfere in any way with defendants' attempt to raise the defense of failure to mitigate damages. *See* ¶ 28(a) and (b), proposed Amended Answer of defendants Wilder and Hurt [Court File No. 77]; ¶ 21, Answer of defendant West [Court File No. 8]. There can be no doubt that the role of the FDIC in trying to liquidate the assets of CCW and in attempting to marshal its assets is a proper subject of inquiry during discovery. Nor is the foregoing intended to prevent defendants from raising a defense of intervening cause occasioned by the conduct of a person or entity which owed some duty of care to the bank.

■■■ The defendants Wilder and Hurt not only attempt to raise a failure to mitigate damages defense and intervening cause defense, they also complain that (1) the plaintiff has not sued other persons who may be liable to CCW, (2) that the manner in which the purchase and assumption agreement for United American Bank, Knoxville, was entered into damaged CCW, and (3) that the plaintiff has impermissibly split its cause of action. *See* proposed amendment to answer of defendants Wilder and Hurt, ¶¶ 28(d) and (e) and 31 [Court File No. 77]. None of these "defenses" are viable, and allowing them to be added to defendants' Answer would only be an exercise in futility. The plaintiff does not have to sue all possible joint tortfeasors in a case such as this one. *See* Memorandum and Order, filed February 8, 1985, pp. 8–11 [Court File No. 38]. The manner in which the purchase and assumption agreement was handled between FDIC/corporate, FDIC/receiver and First Tennessee Bank was sanctioned by federal law and expressly approved by a state chancery court. The FDIC's conduct in connection therewith is irrelevant to the issues in this case. Finally, there is nothing to prevent the FDIC from pursuing claims for damages to CCW against other persons and entities simultaneously with the present officers' and directors' suit. The plaintiff is not suing

former officers and directors of CCW in any other court while pursuing the present action. Allowing these three extraneous "defenses" to be added by the defendants will only serve to cloud the real issues in this action in my judgment and will result in wasted time and money to the litigants.

### B. *Counterclaim*

■■■■■ As explained above in II.A., the FDIC simply had no duty to manage the bank or to bring to the attention of its officers and directors any wrongdoing uncovered during the course of its examinations. The FDIC's duty, as a matter of law, was to protect the insurance fund. Without a duty of care, there can be no finding of negligence. It is a question of law for the Court and it is as simple as that.

> The trial court has the exclusive responsibility to determine whether the law will recognize a duty imposed on the defendant for the plaintiff's benefit.... If the trial court determines that the defendant owes no duty to the plaintiff, then the case draws to a close.

*Roberts v. Robertson County Bd. of Ed.,* 692 S.W.2d 863, 869 (Tenn.App.1985), *cert. denied, id.* Here defendants Wilder and Hurt wish to assume the role of plaintiffs-by-counterclaim and sue the FDIC for "negligence, gross negligence and intentional misconduct in the manner in which it conducted examinations and otherwise executed its policies and followed its procedures."

■■■■■ Aside from the sovereign immunity questions which are apparent,[2] the defendants cannot surmount the threshold obstacle mentioned above, viz. lack of duty owing from the FDIC as examiner to the

defendants. Without such a duty the defendants' counterclaim must fail as a matter of law.

It is therefore ORDERED that the motion of defendants Wilder and Hurt for leave to file a counterclaim be DENIED.

### III. *The Motion for pro hac vice Admission of Marcia J. Meredith, Esq.*

It is ORDERED that the motion be GRANTED.

### IV. *The Motion of Defendant Roger West to Amend His Answer, File a Counterclaim and to File a Third-Party Claim*

For the reasons indicated in II.A. above, the following paragraphs of the defendant's proposed amended answer shall be deemed added to defendant's answer: 32, 34, 35, 36 and 37 [Court File No. 102]. It is ORDERED that the other proposed amendments to the defendant's Answer be DENIED.

For the reasons stated in II.B. above, it is ORDERED that the defendant West's motion for leave to file a counterclaim be DENIED.

It is further ORDERED that defendant West's motion for leave to file a third-party claim against the United States be GRANTED. A revised third-party complaint shall be tendered to the Clerk for filing within ten days of entry of this Memorandum and Orders.

### V. *Motion to Recover Costs*

■■■ It is ORDERED that plaintiff have and recover its costs of $122.80 from defendant, C.H. Butcher, Jr., which it incurred in obtaining personal service upon him. Rule 4(c)(2)(D), Federal Rules of Civil

**2.** The defendants Wilder and Hurt attempt to bring their counterclaim "in part" under the Federal Tort Claims Act. Proposed Amended Answer, ¶ 36 [Court File No. 77]. This they cannot do since the only proper named defendant in such a suit is the United States of America. 28 U.S.C. § 2674; *Mullins v. First National Exchange Bank of Virginia,* 275 F.Supp. 712, 720 n. 3 (W.D.Va.1967). Just because the FDIC has the authority to sue or be sued, 12 U.S.C. § 1819, does not open the door to tort suits

against the FDIC. 28 U.S.C. § 2679(a). Where, as here, a federal agency brings suit, sovereign immunity is waived for claims of recoupment by a defendant. *FDIC v. Lattimore Land Corp.,* 656 F.2d 139, 143 (5th Cir.1981). The difficult question of whether or not any of defendants' defenses state a defense of recoupment need not be reached. *See also FDIC v. Citizens Bank & Trust Co.,* 592 F.2d 364, 368–73 (7th Cir.1979); *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967).

Procedure. The defendant failed to show within the time allowed any reason for his failure to complete and return the notice and acknowledgement of receipt of summons. Local Rule 12(b).

So Ordered.