Settle order on notice.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its separate corporate capacity, Plaintiff,**

v.

**James C. BERRY, et al., Defendants.**

**No. CIV 1-85-62.**

United States District Court, E.D. Tennessee, S.D.

May 8, 1987.

---

Raymond R. Murphy, Jr., James R. Buckner, John C. Harrison, Marcia J. Meredith, Douglas T. Johnson, Charles B. Lee, Miller & Martin, Chattanooga, Tenn., for plaintiff.

Hugh Garner and Brian Mansfield, Morgan & Garner, Randall Nelson, W. Shelley Parker, Jr., Eugene Collins & Assoc., T. Maxfield Bahner, Donna Pierce, Chambliss, Bahner, Crutchfield, Gaston & Irvine, George Caudle, Caldwell, Heggie & Helton, Shelby Grubbs, Grant, Konvalinka & Grubbs, James C. Lee, Campbell & Campbell, James W. Gentry, Jr., Gentry & Boehm, Chattanooga, Tenn., for defendants.

## ORDER

VINING, District Judge for the Northern District of Georgia.

This order is being entered in response to several motions filed in the instant case all of which are to some degree intertwined. Among these are:

(1) motion to strike defenses and dismiss counterclaims as to each defendant filed by the plaintiff Federal Deposit Insurance Corporation (FDIC),

(2) motions and amended motions for leave to file third party complaints against the FDIC in its capacity as receiver of United American Bank-Hamilton County (UAB/HC) and United American Bank-Knoxville (UAB/K), and against the United States of America, filed by defendants Terry Bridgeman (Bridgeman), Wilbert P. Rundles (Rundles), James C. Berry (Berry), James E. Hall (Hall), Curtis A. Swift (Swift), Reuben Strickland (Strickland), and Theodore L. Lamb (Lamb),

(3) motion to dismiss third-party complaints and amended and restated third-party complaints of defendants Berry, Hall, Robert G. Demos (Demos), William Raider (Raider) and Clifton Ward (Ward) filed by the FDIC in its capacity as receiver of UAB/K and UAB/HC, and

(4) motions for leave to amend answers filed by defendants Berry, Hall, Swift, Strickland, Rundles, Bridgeman, and Larry Hunter (Hunter).

## FACTS

The United American Bank of Hamilton County (UAB/HC) was a Tennessee state bank insured by the Federal Deposit Insurance Corporation. The FDIC in its corporate capacity under 12 U.S.C. § 1811, *et seq.*, as insurer of the deposits of UAB/HC did periodic examinations of the bank prior to its closing in 1983. These examination reports were provided to bank officials and board members after completion of the examinations. However, the purpose of the examinations was to protect the depositor insurance fund of the FDIC.

Jacob F. Butcher (Butcher) purchased a majority stock interest in UAB/HC on May 27, 1981. At that time he also became chairman of the board of directors. All named defendants served as board members during the time Butcher had controlling interest of UAB/HC. Defendants Rundles and Lamb served as president at some time during Butcher's tenure with defendants Hunter and Bridgeman serving as executive vice president and vice president and vice president-commercial loans, respectively. The executive committee of UAB/HC during Butcher's reign consisted of Butcher, G.W. Ridenhour, Jr., (Ridenhour), Lamb, Rundles, and Berry.

During the period in which Butcher had control over UAB/HC various loan participations were purchased by UAB/HC from United American Bank—Knoxville (UAB/K), Butcher's flagship bank which went into receivership on February 14, 1983. These participations are the basis of defendants' third-party claims against the FDIC in its capacity as receiver of UAB/K and UAB/HC.

Due to the financial condition of UAB/HC, the Commissioner of Banking of the State of Tennessee pursuant to TCA § 45-2-1502 on May 27, 1983, took exclusive custody and control of the property and affairs of UAB/HC and appointed the FDIC as receiver (FDIC/Receiver) of the bank. The FDIC/Receiver then sold the deposits, certain assets, and certain liabilities to Union Planters National Bank of Memphis for a premium in excess of $5 million in order to keep the UAB/HC banking business as a going concern. To facilitate this purchase and assumption,

FDIC/Receiver and the FDIC in its corporate capacity (FDIC/Corporation) entered into a separate but related agreement pursuant to 12 U.S.C. § 1823(c)(2)(A) whereby FDIC/Corporation purchased the remaining assets of UAB/HC which included all contracts, rights, claims, demands, and choses of action whatsoever not purchased by Union Planters. The price paid by FDIC/Corporation for these assets was in excess of $5 million.

On January 22, 1985, as a result of the closing of UAB/HC the FDIC/Corporation pursuant to the transfer of assets and assignments it received from FDIC/Receiver filed suit against the officers and directors of UAB/HC for breach of statutory, contractual and common law duties owed by the defendants to UAB/HC requesting damages in the amount of $10 million. Due to the fact that both G.W. Ridenhour, Jr. and Jacob F. Butcher were in bankruptcy proceedings at the time suit was filed by the FDIC/Corporation neither were named defendants in the instant suit.

## MOTION TO STRIKE

■ Motions to strike are authorized under Federal Rule of Civil Procedure 12(f). Among the purposes contemplated by Rule 12(f) are a determination by the court of the legal sufficiency of defenses advanced in the pleadings, the saving of time and money where defenses presented confuse the issues in the case and elimination of issues where as a matter of law no set of facts will support the issues subject to the motion to strike. *Sun Insurance Company of New York v. Diversified Engineers, Inc.,* 240 F.Supp. 606 (D.C.Mont.1965); *Goldberg v. Amalgamated Local Union No. 355,* 202 F.Supp. 844 (E.D.N.Y.1962); *Kinnar-Weed Corp. v. Humble Oil and Refining Co.,* 214 F.2d 891 (5th Cir.1954), *cert. denied* 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715; *Anchor Hocking Corp. v. Jacksonville Electric Authority,* 419 F.Supp. 992 (D.C.Fla.1976).

Rule 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules,

upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Although motions to strike are generally not favored and should be used sparingly, *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819 (6th Cir.1953); *Daugherty v. Firestone Tire & Rubber Co.*, 85 F.R.D. 693 (N.D.Ga.1980); *United States v. Firestone Tire & Rubber Co.*, 374 F.Supp. 431 (N.D.Ohio 1974), as Rule 12 iterates, the motion should be granted where the defenses to be stricken are insufficient as a matter of law, *Anchor Hocking Corp., supra*, immaterial in that they "have no essential or important relationship to the claim for relief or the defenses being pleaded," *Fleischer v. A.A.P., Inc.*, 180 F.Supp. 717, 721 (D.C.N.Y.1959), or are impertinent in that the "matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co.*, 245 F.Supp. 889 (D.C.Ill, 1965), *rev'd in part, aff'd in part on other grounds*, 323 F.2d 412 (7th Cir.1963), *cert. denied*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659. The granting of a motion to strike is within the discretion of the court. If the court determines the defenses to be insufficient as a matter of law, immaterial, or impertinent the granting of a motion to strike is appropriate.

As more fully discussed below this court finds that the defenses and counterclaims subject to the motion to strike are insufficient as a matter of law, immaterial and impertinent to the issues before this court.

### DUTY OFFICERS AND DIRECTORS

■ The impetus behind defendants' counterclaims against the FDIC/Corporation, third party claims against the FDIC/Receiver of UAB/HC, FDIC/Receiver of UAB/K and the United States and motions to amend answers is an attempt to transfer the duty of managing the affairs of UAB/HC from the officers and directors of the bank to the FDIC. The FDIC/Corporation performed examinations of the UAB/HC pursuant to requirements of the Federal Deposit Insurance Act. The defendants are asserting a reliance upon those examinations in performance of their duties as officers and directors of the UAB/HC. These examinations, however, were for the sole benefit of the FDIC and the protection of the depositors insurance fund. This court finds that the safe operation of the bank was the responsibility of the directors acting through the officers of the bank and cannot be transferred to the FDIC/Corporation.

The United States Supreme Court has provided a cornerstone for determining the responsibility of officers and directors to their banks. In *Briggs v. Spalding*, 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891) the court held:

Directors must exercise ordinary care and prudence in the administration of the affairs of a bank, and this includes something more than officiating as figure heads. They are entitled under the law to commit banking business, as defined, to their duly authorized officers, but this does not absolve them from the duty of reasonable supervision, nor ought they to be permitted to be shielded from liability because of want of knowledge of wrongdoing, if that ignorance is the result of gross inattention, ... *Briggs*, at 165–166, 11 S.Ct. at 935–936.

Further in *Bowerman v. Hamner*, 250 U.S. 504, 39 S.Ct. 549, 63 L.Ed. 1113 (1919) citing the earlier decision by the court in *Martin v. Webb*, 110 U.S. 7, 3 S.Ct. 428, 28 L.Ed. 49 (1884), the court espouses that the executive officers of a bank transact its business by direction of the board of directors. The executive officers are the arm in the management of a bank's financial operations. These are recognized sound principles.

"Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business and to exercise reasonable control and supervision of its officers. They have

something more to do than from time to time, to elect the officers of the bank, and to make declaration of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business." *Martin*, at 15, 3 S.Ct. at 433.

These decisions of the United States Supreme Court exacting ordinary care and diligence provide general definitions of the duties required by the officers and directors of a bank. The court in each of these cases determined that the facts in each case did not warrant any more specific definitions of the duty of care required. However, the Tennessee Supreme Court has in two cases defined specific acts which would constitute negligence on the part of bank officers and directors. In the most recent of these cases, *Neese v. Brown*, 218 Tenn. 686, 405 S.W.2d 577 (1964), a suit was filed by the trustee of a bank in receivership against the bank directors for losses resulting from "failure of the defendants to use due care and diligence in the discharge of their duties as such directors." *Neese*, 405 S.W.2d at 579. The Chancellor of the lower court overruled demurrers filed by the defendant directors and defendants appealed. The Tennessee court found the averments of the bill within the sphere of the duties of officers and directors espoused by the Tennessee Supreme Court in *Wallace v. Lincoln Savings*, 89 Tenn. 630, 115 S.W. 448 (1891) and *Shea v. Mabry*, 69 Tenn. 319, 1 Lea. 319 (1878). Though written almost 100 years ago the opinion of Judge Lurton in *Wallace* is appropriate even today. The opinion stated:

> Directors, by assuming office, agree to give as much of their time and attention of the duties assumed as the proper care of the interests entrusted to them require. If they are inattentive to their duties, if they neglect to attend meetings of the board, if they turn over the management of the business of the company to the exclusive control of other

agents, thus abdicating their control, then they are guilty of gross neglect with respect to their ministerial duties, and, if loss results to the corporation by breaches of trust or acts of negligence committed by those left in control, which by due care and attention on their part could have been avoided, they will be responsible to the corporation. *Wallace*, 115 S.W. at 653.

In addition, ". . . liability may result from mere inaction on [the directors] part, where such inaction is the proximate cause of a loss. Likewise, a director is chargable with knowledge actually possessed or which he might have possessed had he diligently discharged his functions. Ignorance of performance of illegal acts which is the result of inattention does not exculpate" *Neese*, 405 S.W.2d at 580 quoting Fletcher's Private Corporations Vol. 3, 1947 revised Edition Section 1029, p. 541.

The court in *Neese* denied the demurrer and allowed the acts of negligence charged to stand. Included among those charged acts were failure to provide the time and attention required by the corporation, surrender of control of the corporation to its president, committing of large open and unsecured loans to companies affiliated with the corporation and its president, and failure to carefully examine reports of the status of the corporation which would have revealed the illegal loans and diversions of the company's funds. *Neese*, 405 S.W.2d at 579. These acts of negligence apply equally to banking corporations as well as other private or public corporations. *Neese, supra*.

In the earlier Tennessee Supreme Court case of *Green v. Officers and Directors of Knoxville Bank & Trust Company*, 133 Tenn. 609, 182 S.W. 244 (S.C.Tenn.1915), a denial of demurrer was appealed. The court found that a *prima facie* case of negligence had been found and that the allegations of the bill presented simple negligence involving the making of loans to totally insolvent entities resulting in total losses to the corporation, failure to exercise appropriate supervision of officers and directors, and passing of too much power to

officers of the bank who committed fraudulent acts against the bank which could have been detected by the directors with due diligence which the directors failed to exercise.

Upon a close review of United States and Tennessee Supreme Court cases, attempts by the defendants to transfer responsibility for the management of UAB/HC to the FDIC are ill founded. The responsibility for the bank's management was solely that of its officers and directors who, upon a finding of negligent handling of the bank's affairs can be held responsible to the FDIC/Corporation, as the bank's representative, for losses incurred as a result of the negligence of the officers and directors.

*Dual Capacity of the FDIC*

[redacted] In order to fully address the affirmative defenses and counterclaims asserted by the defendants it is necessary to investigate the purpose of the FDIC as designed by Congress and the means by which this purpose is accomplished. The FDIC was established by Congress in order to promote stability and confidence in the nation's banking systems. *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63, *reh. denied,* 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624 (1982); *First State Bank of Hudson County v. United States,* 599 F.2d 558 (3d Cir.1979). This purpose is achieved in two ways, first by providing insurance for payment to depositors of banks in case of failure, and second by providing an alternate method for handling failed banks by keeping the bank's assets and deposits in tact. In the first instance, the FDIC in its corporate capacity is authorized by 12 U.S.C. § 1821 to act as insurer of the deposits of a bank. In the second instance, the FDIC pursuant to 12 U.S.C. § 1822 and applicable state laws acts in a separate capacity as receiver of the insolvent bank.

[redacted] Generally after a state bank has been declared insolvent, the proper state banking official, in this case the Tennessee Commissioner of Banking, will place the bank into receivership, appointing the FDIC as receiver, pursuant to federal and/or state laws and regulations. In the instant case the Tennessee Commissioner of Banking pursuant to TCA § 45–2–802 appointed the FDIC as liquidating agent of UAB/HC immediately after the Commissioner closed the bank. The FDIC, after being appointed receiver of a failed bank, handles the bank's insolvency under the applicable federal and state laws, in one of two ways. The first, and least used, is through liquidation of the assets of the bank and payment of depositors from the proceeds of the liquidation. The second method, used in this instance, allows for sale of certain assets and liabilities of the failed bank to another bank, with those assets unacceptable to the purchaser being transferred by a written purchase and assumption agreement to the FDIC in its corporate capacity. *Gunter, supra.* In the instant case the FDIC/Receiver was authorized to sell part or all of the bank's assets by TCA § 45–2–805. That the FDIC/Receiver and the FDIC/Corporation acting in these capacities are two separate entities is well accepted law. *See In re F & T Contractors, Inc.,* 718 F.2d 171, 176 (6th Cir.1983) ("Under 12 U.S.C. § 1821(e)(1976) and 12 U.S.C. § 1823(c)(2)(A) (West Supp.1983) ... the FDIC is authorized to act in dual legal capacities simultaneously as the receiver of an insolvent bank and also in a separate corporate capacity as an insurer of bank deposits."). *Gunter, supra* at 874, ("Finally, we note that other federal courts have recognized that under the statute the FDIC may act in a dual capacity."); *Gilman v. FDIC,* 660 F.2d 688 (6th Cir.1981); *FDIC v. Godshall,* 558 F.2d 220, 223 (4th Cir.1977) ("FDIC's capacity as purchaser does not change merely because FDIC, as receiver for Bank, also acted as seller. The federal courts have recognized that FDIC may often act in two capacities simultaneously: as receiver of a bank and as an insurance corporation."). The defendants' attempts to collapse these two separate entities into one are completely without merit.

*Defenses Assertable Against Assignee*

An understanding of the distinction between the FDIC/Receiver and the FDIC/Corporation is necessary in deter-

mining the validity of the defendants' assertions of the affirmative defenses of negligence and contributory negligence and negligence contained in the counterclaims of the defendants. As a result of the purchase and assumption agreement, between FDIC/Receiver and FDIC/Corporation one of the assets transferred to the FDIC/Corporation was the cause of action asserted in this lawsuit against the officers and directors of UAB/HC for breach of fiduciary duty and negligence. Defendants have asserted this transfer was a method of laundering the cause of action and should be ignored by the court. The defendants have alleged that the FDIC/Corporation controlled both sides of the purchase and assumption between the FDIC/Receiver and the FDIC/Corporation orchestrating the assignment in order to cut off defenses. Additionally, the defendants allege that the plaintiff orchestrated the actions of FDIC as receiver of UAB/HC and receiver of UAB/K in order to spread the losses of the Butcher banks to the benefit of the FDIC/Corporation. These assertions though acknowledging the distinction between the FDIC/Receiver and the FDIC/Corporation fail to comprehend the separate nature of the entities.

The defendants have also taken a separate tack and attempted to make the FDIC, in its separate capacities, one entity in order to support the affirmative defenses set forth in their answers and motions to amend. Each of these assertions is aimed at the actions of the FDIC in its capacity as insurer of the deposits of UAB/HC during its examinations of the bank. Defendants also attempt to draw into their scheme the actions of FDIC/Receiver of UAB/K. To support these defenses it is necessary to collapse the FDIC into one entity so that defenses against the assignee (FDIC/Corporation) may be asserted for actions of it prior to the assignment. The actions of the FDIC/Corporation upon which the defendants focus occurred before the assignment of this cause of action from the FDIC/Receiver to the FDIC/Corporation but would be assertable in the scenario presented by defendants as they would be deemed actions of the assignor (FDIC/Receiver) due to the lack of distinction between the as-

signor and assignee. However, the dual capacity of the FDIC prevents asserting such claims.

 A general principle of assignment provides that the assignee steps into the shoes of the assignor upon assignment of the interest and takes the assignment subject to the defenses assertable against the assignor. *Leasing Service Corp. v. River City Construction, Inc.*, 743 F.2d 871 (11th Cir.1984); *Citibank, N.A. v. Tellie/Resources, Inc.*, 724 F.2d 266 (2d Cir.1983); *State Mutual Life Assurance Company of America v. Deer Creek Park*, 612 F.2d 259 (6th Cir.1979). Defendants argue that any actions by the assignee (FDIC/Corporation) prior to the assignment can be used against the assignee as defenses. If this were the case, the above principle of assignment, would not be appropriate. The assignee would be subject to actions not assertable against the assignor, and therefore would have additional characteristics not applicable to the assignor and would not be, as it were, stepping into the shoes of the assignor or merely assuming the position of the assignor. Assertion of any defenses against the assignee applies only in instances where the assignee is a party to the underlying contract or where the conduct of the assignee occurs subsequent to the initial assignment but prior to a reassignment. These facts are nonexistent in the present cause. *FDIC v. Dempster*, 637 F.Supp. 362 (E.D.Tenn.1986); *American Training Services, Inc. v. Commerce Union Bank*, 415 F.Supp. 1101 (M.D.Tn.1976), *aff'd*, 612 F.2d 580 (6th Cir.1979).

 The instant case involves a suit by the bank, or its representative (FDIC/Receiver), against its officers and directors. This action was assigned to the FDIC/Corporation. The FDIC in such capacity steps into the shoes of UAB/HC as plaintiff in this suit. As such the FDIC/Corporation is not subject to defenses asserted against it for actions prior to the assignment, as it was not a party to the obligations of the officers and directors to UAB/HC, nor was it a prior assignee of the action. Since the defenses of contributory negligence and negligence, and the negligence counter-

claims involve actions prior to the assignment upon which this action is based, these defenses and counterclaims as a matter of law are not assertable against the plaintiff.

As an alternative argument, defendant Hunter attempts again to shift the duty of care to the FDIC by asserting an agency relationship between the FDIC/Receiver of UAB/HC and the FDIC/Corporation under a theory of *respondeat superior*. Not only is this agency theory used to connect the FDIC/Corporation to the FDIC/Receiver for UAB/HC but Hunter attempts to connect the FDIC/Corporation, plaintiff in the present action, with FDIC/Receiver for UAB/K, ostensibly requesting indemnification by the FDIC for acts of the FDIC as receiver for UAB/K in its refusal to pay to UAB/HC moneys collected on loan participations transferred to UAB/HC.

■ The court finds that the FDIC/Corporation and the FDIC/Receiver of UAB/HC are separate and distinct entities with no implicit or explicit agency relationship. It can see no means by which actions of FDIC/Receiver of UAB/K, a totally unrelated bank for purposes of this suit, can be in any way imputed to FDIC/Corporation as assignee of the current action. If the court allowed this theory to stand, any actions by FDIC as receiver of any bank in receivership could be imputed to FDIC/Corporation in any suit it may initiate by implying that the attention required of FDIC to said bank hindered the effective handling by FDIC of the receivership. This court finds that each bank closure handled by the FDIC is separate and distinct and the FDIC handles each in a distinct capacity. The actions of the FDIC and its involvement with one bank closure cannot be imputed to the FDIC in suits involving other banks and other closures.

Additionally as noted below, standing to sue the FDIC for negligence with regard to the closing of UAB/K rests with UAB/K or its representative not with the defendant, officers and directors of UAB/HC.

### Duty of the FDIC and Negligence

The defendants' assertions of contributory negligence rest upon the supposition that contributory negligence does not re-

quire a duty on the part of the party against whom the defense is being asserted. The FDIC performed certain bank examinations which the defendants allege should have uncovered practices leading to the failure of UAB/HC. The defendants allege that the failure to discover constitutes negligence on the part of the plaintiff. They further allege that the failure to inform the bank and its officers and directors of any illicit banking practices which it did uncover was negligence on the part of the plaintiff and such actions of negligence should act as a bar to recovery. These allegations of negligence are couched in several different forms including affirmative defenses of contributory negligence, estoppel, and mitigation of damages as well as counterclaims against the FDIC for negligence and third party complaints against the United States for the alleged negligent actions of the FDIC.

■ The defendants contend that no duty is required for the affirmative defense of contributory negligence. The assertion is correct when applied to general tort law. However, the case currently before the court involves banks and banking practices, where it is a general principal of banking law that "[i]f, through recklessness and inattention to the duties confided to him, frauds and misconduct are perpetrated by other officers and agents or co-directors, which ordinary care on his part would have prevented, [a director of a bank] is personally liable for the loss resulting." In 1 Michie on Banks and Banking, chapter 3, § 63 at p. 280 (1973) (footnote omitted). The duty to discover fraud and misconduct is squarely upon the officers and directors of the banking institution and may not be transferred to the FDIC by purchasing insurance from it, *First State Bank of Hudson Co., supra*, nor by attaching to the FDIC negligence for actions performed at the time during which officers and directors had primary responsibility for the bank. In fact, the insurance provided by the FDIC is insurance benefiting the depositors of the bank, not an indemnification of its officers and directors. This reasoning applies to affirmative defense assertions of contributory negligence, estoppel, and miti-

**1484**

gation of damages as well as to counterclaims for negligence on the part of the FDIC.

In their motions for leave to file counterclaims the defendants attempt to set forth the negligence claim by several methods, all of which impose a duty on the FDIC, which imposition is misplaced. These methods are all aimed at the bank examinations performed by the FDIC prior to the Commissioner of Banking rendering UAB/HC insolvent. "The purpose of the bank examinations by the FDIC under 12 U.S.C. § 1820(b) is to prevent losses that would result in claims against the insurance fund.... If the bank examinations by the FDIC reveal any irregularities or fraud such examinations, though they may inure incidentally to the benefit of a bank, are intended primarily for the protection of the insurance fund," *First State Bank of Hudson County v. United States,* 599 F.2d 558, 563 (3d Cir.1979) (footnote omitted); see also *In re Franklin National Bank Securities Litigation,* 478 F.Supp. 210 (E.D.N.Y.1979), and not for the benefit of its officers and directors. The failure of the FDIC to discover fraud or weakness, or even to disclose such adverse information if it is discovered does not establish a claim for relief against the United States or the FDIC. Nor does the alleged failure to take action to remedy the problems establish a claim for relief. The supposed assumption of supervisory duties by the FDIC upon which the defendants allegedly relied in performing their duties as officers and directors of the UAB/HC is non-existent. The examinations performed by the FDIC were those authorized by the Federal Deposit Insurance Act and cannot be seen as services to the bank upon which defendants could rely in performance of their duties as officers and directors. "Federal bank examinations are not beacons to light the path of erring directors or gulled stockholders," *Harmsen v. Smith,* 586 F.2d 156, 158 (9th Cir.1978).

### FAULTY ASSIGNMENT

■ Defendants Berry, Hall, Swift, Strickland, Hunter, Rundles, and Bridgeman have filed motions to amend their answers primarily challenging the assignment of the present cause of action to the FDIC/Corporation. While allowing that granting of motions to amend are left to the sound discretion of the trial court based upon the facts and circumstances surrounding the proposed amendment, the defendants rely upon the liberal construction of Rule 15(a) for allowing the amendments. Prejudice to the opposing party is one element addressed in determining whether to allow amendments to the pleadings, the court is also well advised to direct its attention to other facts such as the futility of the proposed amendment, bad faith of the moving party, undue delay in filing the motion, and lack of notice to the opposing party. *Podlesnick v. Airborne Express, Inc.,* 94 F.R.D. 288 (S.D.Ohio 1982).

■ In its brief in response to the defendants' motion to amend on the grounds of the alleged inadequate and ineffective assignment of the present cause of action, the plaintiff relies on the futility of the proposed amendment to support its opposition to it. Since the defendants have failed to present any factual support for the proposed amendment the court can only assume the assignment question is directed to the transfer of the claim from the FDIC/Receiver to the FDIC/Corporation and that the assignment of the cause of action before this court was not a bona fide assignment. The only support for this is found in *Federal Deposit Insurance Corporation v. Ashley,* 408 F.Supp. 591 (E.D. Mich.1976), which was reversed in *Federal Deposit Insurance Corporation v. Ashley,* 585 F.2d 157 (6th Cir.1978). The only objections to the assignment of assets, including causes of action against the bank officers and directors, found by the district court in *Ashley* were (1) that the FDIC acted as both the seller and purchaser in the assignment agreement, and (2) that under the assignment agreement the FDIC would retain amounts obtained in excess of the value it paid for the "unacceptable assets." As to the former objection, it is well established as noted above that the FDIC is authorized to act in two separate capacities under the statutory scheme of the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq.,* in its capacity as the receiver of a

failed bank and in its corporate capacity. *See also FDIC v. Ashley,* 585 F.2d 157 at 160, and *Godshall, supra,* at 223; *In re F & T Contractors, Inc.,* 718 F.2d 171, 176 (6th Cir.1983); *Gunter, supra.* In addition, the Tennessee Code, section 45–2–802, provides:

> The Federal Deposit Insurance Corporation may be appointed receiver of any state bank, the deposits in which are to any extent insured by said corporation and which shall have been closed on account of inability to meet the demands of its depositors, or otherwise by the law of Tennessee. The Commissioner after taking possession of a state bank shall have the right to appoint the Federal Deposit Insurance Corporation as receiver. Upon acceptance of the appointment as receiver, the Federal Deposit Insurance Corporation shall not be required to post bond or security. If the state corporation accepts such appointment, it shall have and possess all of the duties, powers, and privileges provided by the laws of this state with respect to receivers of closed banks, except insofar as such duties, powers, and privileges are in conflict with the Federal Deposit Insurance Act. In addition thereto, the Federal Deposit Insurance Corporation as receiver shall have the right to make an emergency sale of assets of a closed bank ...

and in fact may make such a sale to the FDIC with approval of the court even if appointed as receiver of a failed bank, TCA § 45–2–804, acknowledging that Tennessee law recognizes as well the distinction between the FDIC in its corporate capacity and the FDIC as receiver.

In addressing the latter retention by the FDIC of amounts in excess of its payment for the unacceptable assets the Court of Appeals in *Ashley* found the return to the FDIC/Receiver of assets recovered in excess of amounts spent by the FDIC/Corporation was not a bar to jurisdiction nor did it collapse the assignment of FDIC/Receiver to FDIC/Corporation and deny separate treatment of the two entities.

Since the defendants have presented no factual or legal support for the faulty assignment allegation, the court can go no further in analyzing its motion.

In addition to the assertion of improper assignment defendant Rundles has proposed several other amendments to his answer. These include (1) a failure to mitigate damages, (2) an assertion that the FDIC as a matter of law and equitable estoppel cannot recover against defendant Rundles to the benefit of Jacob F. Butcher, as controlling shareholder of the bank and in whom lies liability and responsibility for losses to the bank, and (3) the assertion that the defendant Rundles pursuant to the bank's charter is liable to the bank only for acts of gross negligence and willful misconduct.

As to mitigation of damages Rundles has pled this as a defense in his initial answer and it is unnecessary as an amendment to Rundles' answer.

■ As to recovery by the FDIC on behalf of Jacob F. Butcher the initial cause of action rested in the bank itself not in the shareholders of the bank. The action was assigned to the FDIC/Corporation by the FDIC/Receiver. The action is for negligence and breach of fiduciary duty of the officers and directors with funds recovered going first to the assignee (FDIC/Corporation) to recover costs expended by the FDIC/Corporation for purchase of the unacceptable assets of UAB/HC in order to effectuate a sale of the remaining assets of the bank. Any recovery by the FDIC/Corporation in excess of its initial $5 million cost will revert to the FDIC/Receiver to pay depositors and creditors of UAB/HC. The suit is not for the benefit of Butcher nor are any recovery amounts likely to be disbursed to him.

■ The third proposed amendment addresses the alleged clause in the bank's charter holding defendants responsible to the bank only for acts of gross negligence or willful misconduct. This court has discussed the duties and responsibilities of the officers and directors of a bank. These duties and responsibilities cannot be contracted away, as they are mandated by the decisions of the United States and Tennessee Supreme Courts.

## JUDICIAL ESTOPPEL

All of the defendants have asserted the defense of judicial estoppel as a result of the plaintiff's claim of legal malpractice in an action in the Southern Division of the United States District Court for the Eastern District of Tennessee styled *FDIC v. Ridenhour, Bowers, Shumate, McCloud & Lacy,* Civil Action No. 1–84–649 (Ridenhour complaint).

■■■■ Judicial estoppel is a general precept whereby a party is bound by sworn statements made during judicial proceedings, generally in former litigation, and cannot contradict the sworn statements in the subsequent litigation. *Allison v. Neal,* 217 Tenn. 181, 396 S.W.2d 344 (1965); *Melton v. Anderson,* 32 Tenn.App. 335, 222 S.W.2d 666 (1948). The defendants failed to meet these elements on several counts. First, the Ridenhour complaint filed by plaintiff is not made under oath. The pleadings involve only the position of the plaintiff in the action. Consequently, judicial estoppel may not rest on this basis. *Sturkie v. Bottoms,* 203 Tenn. 237, 310 S.W.2d 451 (1958). Second, the allegations in the Ridenhour complaint are not inconsistent with the allegations in the present action. The Ridenhour complaint generally deals with the legal malpractice of the Ridenhour defendants in their dealings with UAB/K. The instant case involves negligence and a breach of certain contractual fiduciary duties of the these defendants toward UAB/HC. These allegations considered together are not inconsistent. The allegation of malpractice by one set of defendants does not preclude the assertion of breach of contract and breach of fiduciary duties against the others, even though they may involve the same or similar sets of facts. Consequently, the court finds that the defense of judicial estoppel is insufficient as a matter of law and cannot be raised as a defense in the current action.

## DEFENSES OF LACHES, WAIVER, AND STATUTE OF LIMITATIONS

■■■ The defendants have asserted, through their original answers and through their motions to amend, the defenses of laches, waiver, and running of the statute of limitations. These defenses all involve the passage of time from the date on which the right of action accrues to the actual filing of the suit. This right of action did not arise until the bank was closed by the Commissioner of Banking of the State of Tennessee on May 27, 1983. Prior to that time any cause of action for breach of fiduciary duty and negligence against the officers and directors must be made by these same officers and directors as the controlling body of the bank, or by the shareholders to whom these officers and directors were providing information with regard to the status of the bank. Without knowledge of the alleged wrongful activities of the officers and directors, the shareholders would have neither the opportunity nor the information sufficient to bring suit. *Federal Deposit Insurance Corporation v. Byrd,* 516 F.Supp. 647 (D.P.R.1981). Therefore, the right of action would not arise until after the officers and directors relinquished control of the bank in May 1983. *Byrd.* At that time the FDIC/Corporation was assigned the right of action of the bank against its officers and directors, and filed suit pursuant to that right on January 22, 1985, well within the statute of limitations and as soon as practicable after obtaining that right. Thus the defenses of laches, waiver, and running of the statute of limitations are insufficient as a matter of law.

## COUNTERCLAIMS AGAINST FDIC/RECEIVER

■■ A number of the defendants have asserted counterclaims against the FDIC in its capacity as receiver of UAB/HC and as receiver of UAB/K. As noted previously in this opinion, the FDIC acts in two separate capacities and hence is considered two separate entities. Since the FDIC as receiver for either UAB/HC or UAB/K is not a party to this action, the defendants may not assert any claim against the FDIC in that capacity, as this court has no jurisdiction over counterclaims asserted against the FDIC in its capacity as receiver of UAB/HC or as receiver of UAB/K. *In re F & T Contractors, Inc.,* 718 F.2d 171 (6th Cir.1983).

### THIRD–PARTY COMPLAINTS AGAINST THE UNITED STATES

■ All of the defendants have either filed or requested leave to file third-party complaints against the United States for acts of the FDIC as its agent. These third party actions against the United States of America involve the alleged negligence of the FDIC. Since this allegation is in the form of a third-party complaint administrative remedies need not be exhausted prior to impleading the United States as a third-party defendant. 28 U.S.C. § 2675(a). However, the claim may be advanced only if "a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The claim, sounding in negligence, requires a duty on the part of the FDIC to the defendants. The court has determined that the FDIC owed no duty to the defendants; therefore, the defendants have failed to state a claim upon which relief can be granted and all third party claims and requests for leave to file third-party claims are hereby DENIED.

Pursuant to the findings of law as hereinabove set forth, the court hereby STRIKES the following:

(1) the defenses of defendants Swift and Strickland contained in paragraphs 9(d)–(f) and (h), 15, 16, 17(c), 19, 21–1(a)–(d), 21–2, 22, 23(a)–(d), 24, 25, and 26;

(2) the defenses of defendants Berry and Hall contained in paragraphs 11(d)–(f), 16, 17, 18(c), 20, 22–1(a)–(d), 22–2(a)–(d), 24, 25, and 26;

(3) the defenses of defendants Demos, Raider, and Ward being the first, second, third, fifth, seventh (a)–(d), eighth (a)–(d), ninth, tenth, eleventh, twelfth, and fourteenth defense paragraph 9(d) and (f);

(4) the defenses of defendant Lamb contained in paragraphs 18(a) and (b), 19, 20(a)–(c), 21(a)–(e);

(5) the defenses of defendants Rundles and Bridgeman contained in paragraphs 10(d)–(f), 15, 16, 17(c), 19, 21(a)–(d), 22(a)–(d), 23, 24, and 25; and

(6) the defenses of defendant Hunter contained in paragraphs 11(d)–(f), 19, 20, 21(c), 23, 25(a)–(d), 26(a)–(d), 27 and 28.

All of the defendants' counterclaims are hereby DENIED.

The defendants' motions to amend, requests to file counterclaims and requests to filed third-party complaints are hereby DENIED.