**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Plaintiff,**

v.

**Sam L. MANATT, Jr., Frank Bentley Manatt, Guardian of Nettie K. Manatt, Jim Manatt, John Manatt, Sam L. Manatt, III, Harold Riggan, Jr., Ben Williams, Louise Coleman, Donis Simpson, Arthur C. Woods, Sr., Franklin Hall, Ray R. Thomas, Dr. B.C. Page, Paul D. Moore, Jan V. Rockwell, Bob Lockwood; and Jim Vinson, Defendants.**

No. J–C–86–217.

United States District Court,
E.D. Arkansas,
Jonesboro Division.

March 16, 1989.

Dina L. Biblin and Jeffrey Axelrad, U.S. Dept. of Justice, Washington, D.C., Richard Donovan and Webster Hubbell, Rose Law Firm, Little Rock, Ark., for plaintiff.

Dan Stripling, Stripling & Morgan, Clinton, Ark., Jeffery C. Gerrish, Gerrish & McCreary, Memphis, Tenn., Gary Day Garland, Corning, Ark., Martin H. Aussenberg, Berod & Huggins, Memphis, Tenn., E. E. Maglothin, Jr., Fayetteville, Ark., J. R. Buzbee, Givens & Buzbee, Little Rock, Ark., for defendants.

John Manatt, Sheridan, Ark., pro se.

Bob Lockwood, Corning, Ark., pro se.

Jim Manatt, Los Frenos, Tex., pro se.

Jim Vinson, Corning, Ark., pro se.

## ORDER

GEORGE HOWARD, Jr., District Judge.

On June 15, 1984, the Bank Commissioner of the State of Arkansas determined that Corning Bank ("Bank") was insolvent, ordered the Bank closed, and tendered the Bank's assets and affairs to the Federal Deposit Insurance Corporation ("FDIC") as Receiver pursuant to Ark. Stat. Ann. §§ 67–601 *et seq.* (now A.C.A. 23–33–101 *et seq.*) and 12 U.S.C. § 1821(e). On the same date, pursuant to 12 U.S.C. § 1823(c)(2)(A), the FDIC in its corporate capacity purchased from the Receiver certain assets and interests of the Bank, including those claims of the Bank against the officers and directors.

On October 31, 1986, the FDIC in its corporate capacity filed this action against various officers and directors of the Bank, alleging breach of duty and negligence in discharging their responsibilities for operating and managing the Bank, including allegations of imprudent extensions of credit and miscellaneous payments to the officers and directors, their relatives and businesses. The FDIC, as assignee of the claims of the Bank, seeks judgment in an amount yet undetermined representing losses on loans and expenses which im-

paired the Bank's assets and ultimately brought the Bank to a condition of insolvency.

Plaintiff filed its amended complaint on January 11, 1988. On January 28, 1988, separate defendant Ben Williams, Jr. ("Williams") filed his amended answer and counterclaim. According to his counterclaim, Williams alleges that the FDIC negligently supervised the Bank's operations, was negligent in liquidating the Bank's assets and made false representations. Williams seeks a setoff of any judgment against him and further seeks punitive damages for the alleged misrepresentations. In his amended answer, Williams raises the affirmative defenses of statute of limitations, release and accord and satisfaction.

Plaintiff has filed a motion to dismiss the counterclaim and a motion to strike the affirmative defenses. In addition, there are a number of other motions, some concerning the entry of default judgments and service on defendant Sam Manatt, Jr., which are pending. The Court has reviewed the arguments of the parties and the applicable law and rules as follows:

1. *Williams' Motion for Default Judgment*

■ Williams has filed a motion for default judgment on his counterclaim. Williams filed his counterclaim on January 28, 1988, and he argues that plaintiff was in default for failing to file a timely response.

FDIC moved to dismiss the counterclaim on March 29, 1988. FDIC claims that it received the counterclaim on January 29, 1988, and that its motion to dismiss was timely.

FDIC, as a federal agency, has sixty days to respond to the counterclaim. F.R. Civ.P. 12(a); *Rauscher Pierce Refsnes, Inc. v. FDIC*, 789 F.2d 313 (5th Cir.1986). FDIC's motion filed within sixty days of service is timely. Accordingly, the motion for default judgment is denied.

2. *Motion to Dismiss Counterclaim*

Plaintiff argues that the Court lacks subject matter jurisdiction over Williams' counterclaim in that he failed to bring his claim against the United States as a party defendant, that the claim is barred by the exceptions of the Federal Tort Claims Act ("FTCA"), and that the counterclaim is not compulsory under F.R.Civ.P. 13(a). Williams argues that the FDIC has waived its sovereign immunity by virtue of the "sue and be sued" clause (12 U.S.C. § 1819), and that his claim is in contract, not tort, so that the FTCA exceptions do not operate to bar it.

The arguments raised by Williams have been raised in similar cases. In those situations, the courts have not been reluctant to dismiss counterclaims by bank officers and directors who alleged virtually the same claims as alleged here. For a number of reasons, the counterclaim must be dismissed.

■ Williams argues that sovereign immunity is waived by virtue of the "sue and be sued" clause. The "sue and be sued" clause does not open the door for tort suits against the FDIC. *FDIC v. Blackburn*, 109 F.R.D. 66, 75 n. 2 (E.D.Tenn. 1985). Williams' reliance on *Franchise Tax Board of California v. United States Postal Service*, 467 U.S. 512, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984), is misplaced. In that case, the Supreme Court construed the "sue and be sued" clause of 39 U.S.C. § 401(1) concerning the U.S. Postal Service, in evaluating the responsibility of the Postal Service to withhold portions of its employees' salaries to pay delinquent taxes owed a state government. It is not authority for construing 12 U.S.C. § 1819 as a general waiver of sovereign immunity.

■ Williams also argues that his claims do not come under the FTCA. He argues that his counterclaim is not a tort, but a contract, so that the exceptions of the FTCA do not apply. He further argues that the counterclaim is compulsory, so that sovereign immunity is waived.

Williams' attempt to characterize his claim as a contract action or "contort" so

as to bring it outside the FTCA's exceptions is without merit. A review of Williams' allegations reveal that his counterclaim is a tort action. The counterclaim alleges in pertinent part:

47. Ben Williams, Jr., in his capacity as board member of the Corning Bank and for his counterclaim ... states that the FDIC was negligent in its supervision of the Corning Bank during the period of time that the FDIC issued its cease and desist order and the closing of the Corning Bank, and thereafter the FDIC was negligent in the liquidation of the assets of the Corning Bank. The negligence of the FDIC through its employees and or agents proximately caused damage ...

48. At times relevant hereto, representatives and/or agents ... of FDIC made certain representations to Ben Williams, Jr., in his capacity as a Board Member of the Corning Bank. Said representations, among others, consisted in part that if the Corning Bank was managed within the guide lines specified by the FDIC that the FDIC would not disrupt the community in requiring that the Bank Commissioner close the Bank of Corning; in addition, representatives ... of the FDIC represented to Williams and others that if Sam Manatt resigned his position with the bank that the bank could continue in operation under the same management of the Board of Directors; furthermore, in November, 1983, Morocco, in his capacity as a representative of the FDIC represented to Williams and Manatt that in the event a loan was requested under the applicable banking regulations, he would stop any application for loan.

49. The representations specified herein among other representations were false or made with the reckless disregard for their truth or falsity.

50. Williams ... relied upon the representations to his detriment.

51. The misrepresentations ... proximately caused damage to Williams ...

52. The misrepresentations made by representatives of [FDIC] to Williams in his capacity as a director were made with the intent and purpose to cause harm to Williams and thus, Williams should be awarded punitive damages against the FDIC ...

A reading of these allegations leads the Court to only one conclusion, that the counterclaim is a tort action, and not a contract action. Nowhere does Williams assert the existence of a contract or allege the existence of elements giving rise to an implied contract. Furthermore, the Court is unable to find any authority for Williams' assertion of a "contort" cause of. action.

■ Williams' argument that his counterclaim is compulsory is likewise without merit. Rule 13(a) provides that a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim". Plaintiff correctly contends that Williams counterclaim is directed towards the FDIC's acts as a federal regulator, not to FDIC's status as assignee of the Bank's claim. Thus, the counterclaim is not asserted against the "same party" as plaintiff (see discussion *infra* concerning the need to bring an FTCA action against the United States). Furthermore, the counterclaim does not arise out of the same transaction or occurrence. *See FDIC v. Berry*, 659 F.Supp. 1475, 1483–84 (E.D. Tenn.1987) ("The instant case involves a suit by the bank, or its representative (FDIC/Receiver) against its officers and directors. This action was assigned to the FDIC/Corporation. The FDIC in such capacity steps into the shoes of [the bank] as plaintiff in this suit. As such the FDIC/Corporation is not subject to defenses asserted against it for actions prior to the assignment, as it was not a party of the obligations of the officers and directors of [the bank], nor was it a prior assignee of the action. Since the defenses of contributory negligence and negligence, and the negligence counterclaims involve actions prior to the assignment upon which this action is based, these defenses and counterclaims as a matter of law are not assertable against the plaintiff."). *See also FDIC v. Dempster*, 637 F.Supp. 362, 366 (E.D. Tenn.1986).

■ Furthermore, the Court finds that Williams' counterclaim is not one for re-

coupment, wherein the United States has waived sovereign immunity. *FDIC v. Shinnick*, 635 F.Supp. 983 (D.Minn. 1986). The requirements of a recoupment claim are that the "claim must (1) arise from the same transaction or occurrence as the government's suit, (2) seek relief of the same kind or nature, and (3) seek an amount not in excess of the government's claim." *Id* at 985.

As discussed above, Williams counterclaim is independent of plaintiff's cause of action. Furthermore, the counterclaim is not asserted against plaintiff as assignee of the Bank's claim, but against the FDIC as regulator.

In sum, the Court finds that the FDIC has not waived sovereign immunity by virtue of the "sue and be sued" clause. The Court further finds that Williams' counterclaim is not compulsory.

■ Plaintiff asserts that the counterclaim must be dismissed for lack of subject matter jurisdiction under the FTCA. The FTCA is the exclusive remedy for tort claims against the government. The FDIC is a federal agency and within the coverage of the FTCA. *Safeway Portland Employees' Federal Credit Union v. FDIC*, 506 F.2d 1213 (9th Cir.1974).

■ Pursuant to the FTCA, Williams' counterclaim must be dismissed. The action must be brought against the United States; the government agency cannot be sued in its own name. Since the United States is not a party to this action, the counterclaim must be dismissed as a matter of law. *See FDIC v. Shinnick*, 635 F.Supp. at 985 n. 2.

■ Furthermore, Williams failed to file a timely administrative claim against the United States before bringing his tort action. 28 U.S.C. § 2675(a). The filing of an administrative claim is a jurisdictional prerequisite. *Melo v. United States*, 505 F.2d 1026 (8th Cir.1974).

■ The counterclaim must also be dismissed pursuant to the FTCA because it expressly excepts claims based upon an act or omission of a federal employee exercising a discretionary function or duty. 28 U.S.C. § 2680(a). Williams' allegations of negligent performance or regulatory and statutory supervision or monitoring of the bank are barred by the exceptions contained in section 2680. *Emch v. United States*, 630 F.2d 523 (7th Cir.1980), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1482, 67 L.Ed.2d 614 (1981). Furthermore, Williams' allegations of misrepresentation and deceit are excepted under 28 U.S.C. § 2680(h). *Safeway Portland E.F.C.U., supra.*

■ In addition to all the above reasons, the Court finds that the counterclaim based on negligence must be dismissed because it fails to state a claim upon which relief can be granted. The FDIC does not have a duty to manage the bank or bring to the attention of its officers and directors any wrongdoing uncovered during its regulatory activities. *FDIC v. Blackburn*, 109 F.R.D. 66, 75 (E.D.Tenn.1985) ("The FDIC's duty, as a matter of law, was to protect the insurance fund. Without a duty of care, there can be no finding of negligence.") *See also FDIC v. Berry*, 659 F.Supp. 1475, 1483 (E.D.Tenn.1987) ("The duty to discover fraud and misconduct is squarely upon the officers and directors of the banking institution and may not be transferred to the FDIC by purchasing insurance from it ... nor by attaching to the FDIC negligence for actions performed at the time during which officers and directors had primary responsibility for the bank.")

The Court finds that plaintiff owed no duty to Williams arising out of its regulatory activities with regard to the Bank and therefore the counterclaim for negligence must be dismissed.

For the reasons stated above, the Court grants plaintiff's motion to dismiss the counterclaim.

3. *Motion to Strike Affirmative Defenses*

■ In his amended answer, Williams asserts the affirmative defenses of statute of limitations and release, accord and satisfaction. Plaintiff has moved to strike the defenses pursuant to F.R.Civ.P. 12(f). Rule 12(f) provides that the Court "may

order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Williams opposes the motion, stating that there is insufficient evidence for the Court to rule on the sufficiency of the defenses and asks that the Court take the motion to strike under advisement.

The Court cannot agree with Williams' assessment. The Court notes that Williams' response to the motion was filed eleven months ago. If Williams had additional information to supply the Court on the affirmative defenses, he should have provided it by now. He has not.

FDIC's cause of action accrued upon its appointment as receiver of the Bank, i.e. on June 15, 1984. *FDIC v. Hudson*, 673 F.Supp. 1039 (D.Kan.1987). The Court, however, must determine whether the causes of action against Williams were time-barred under A.C.A. 16–56–105 when the FDIC received them.

■■■ The Court finds that under the "adverse domination" method for determining when a cause of action accrues, the statute of limitations is tolled as long as the bank is dominated by the same wrongdoers against whom a cause of action exists. *FDIC v. Bird*, 516 F.Supp. 647 (D.P.R.1981). The rationale behind this method has been expressed best in *Bird:*

> Is it logical to assume that the Directors, in whom the Bank entrusted the discretion to sue, would authorize the initiation of an action against themselves for their own improprieties? To prevent bank directors who control and dominate the affairs of a bank to benefit from their own inaction by finding that, as a matter of law, limitations run from the moment of their commission of improprieties, is a result which justice could not tolerate.

516 F.Supp. at 651.

Similarly, in *FDIC v. Berry*, 659 F.Supp. 1475 (E.D.Tenn.1987), the court granted FDIC's motion to strike the defendant-director's affirmative defense of statute of limitations. The court found that the cause of action did not arise until after the officers and directors relinquished control of the bank. The court stated in pertinent part:

> Prior to that time [the bank's closing] any cause of action for breach of fiduciary duty and negligence against the officers and directors must be made by these same officers and directors as the controlling body of the bank, or by the shareholders to whom those officers and directors were providing information with regard to the status of the bank. Without knowledge of the alleged wrongful activities of the officers and directors, the shareholders would have neither the opportunity nor the information sufficient to bring suit.

*Id.* at 1484.

■■■ Williams remained a director of the Bank until the date of closing. The cause of action against him did not accrue until June 15, 1984. The complaint was filed on October 31, 1986, well within the applicable federal statute of limitations. 28 U.S.C. § 2415(b).

The Court finds, as a matter of law, that Williams' affirmative defense of statute of limitations is insufficient.

■■■ Williams also asserts affirmative defenses of release and accord and satisfaction. Williams has not responded to the arguments raised by plaintiff with respect to these defenses. The Court notes that Williams cannot assert defenses against the FDIC as assignee based on actions taken by the FDIC in its corporate capacity prior to the assignment. *FDIC v. Berry, supra.* The Court finds no legal bases for these affirmative defenses and concludes that they are also insufficient as a matter of law.

Accordingly, the motion to strike the affirmative defenses of Williams' amended answer is granted.

4. *Williams' Motion to Reconsider and Vacate Order for Alternative Service; Plaintiff's Application for Default Against Sam L. Manatt, Jr.; and Plaintiff's Motion to Strike the Answer of Sam L. Manatt, Jr.*

■■■ By Order dated May 9, 1988, the Court granted FDIC's motion for alterna-

tive service of process pursuant to F.R.Civ. Pro. 4(i)(1)(E) and allowed FDIC to attempt to serve defendant Sam L. Manatt, Jr. ("Manatt") in China. Defendant Williams objected to the motion at the time, and the Court found his arguments to be without merit.

Williams now moves to reconsider the May 9 Order and renews his motion to dismiss the complaint against Manatt without prejudice. Williams' motion is moot. Manatt has been served with process and has answered. Furthermore, as Manatt has not objected to sufficiency of process, Williams' arguments concerning alternative service remain meritless.

On January 25, 1989, plaintiff filed an application for default judgment against Manatt. On February 1, 1989, Manatt filed an answer to the amended complaint. On February 3, 1989, plaintiff filed a motion to strike Manatt's answer, stating that it was untimely. Plaintiff contends that defendant was served on August 19, 1988.

■■■■ At the outset, the Court notes that as defendants are sued jointly and severally, plaintiff would only be entitled to the entry of default.[1] Wright, Miller & Kane, *Federal Practice and Procedure: Civil*, § 2690 at p. 455–456 ("As a general rule then, when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.")

■■■ The Court is persuaded that under the circumstances an entry of default is not warranted and that the motion to strike Manatt's answer should be denied. According to plaintiff's affidavits, Manatt refused to accept the summons and complaint on August 19, 1988. On November 5, 1988, the summons and complaint were mailed to Manatt at Room 2754, Min Zue Hotel, Beijing, China. There is no indication when

Manatt received the mailed papers. On February 1, 1989, Manatt filed an answer to the amended complaint.

■■■ The grant or denial of a motion for entry of default judgment is within the Court's discretion. Nevertheless, the entry of judgment by default is a drastic remedy which should be used only in extreme situations. *Flaska v. Little River Marine Construction Co.*, 389 F.2d 885 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). "There is a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits, ... particularly when the monetary damages sought are substantial." *Swink v. City of Pagedale*, 810 F.2d 791, 793 n. 2 (8th Cir.), *cert. denied*, 483 U.S. 1025, 107 S.Ct. 3274, 97 L.Ed.2d 772 (1987). Plaintiff has not demonstrated that it is substantially prejudiced by the belated answer. Furthermore, the Court is not persuaded that Manatt's failure to answer in a timely manner was willful.

In sum, the application for default judgment and the motion to strike Manatt's answer are denied.

## CONCLUSION

Accordingly, the motions to dismiss the counterclaim and to strike the affirmative defenses are granted. Williams' motion for default judgment and plaintiff's application for default judgment are denied. Williams' motion to reconsider and vacate is moot, and plaintiff's motion to strike Manatt's answer is denied.

IT IS SO ORDERED.

1. Manatt argues that the answer of a co-defendant inures to the benefit of a defaulting defendant where there exits a common defense as to both of them. That is the law in Arkansas, however, a timely answer filed by one defendant does not, *under federal procedure,* inure to the benefit of other defendants. *See Hunt v. Inter–Globe Energy, Inc.,* 770 F.2d 145 (10th Cir. 1985); *Warrington USA, Inc. v. Allen,* 631 F.Supp. 1456 (E.D.Wis.1986); *Weft, Inc. v. G.C. Investment Associates,* 630 F.Supp. 1138, 1143 (E.D.N.C.1986).